**QUALITY CARE OPTIONS, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 2012.

Decided Dec. 14, 2012.

---

Wendy S. Smith, Philadelphia, for petitioner.

Maribeth Wilt-Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

The central issue in this unemployment compensation appeal is whether Jamal Mack (Claimant), who performed healthcare services to clients of Quality Care Options (Company), did so as an employee or as an independent contractor. The compensation authorities determined Claimant was an employee. On its appeal, Company questions whether the record supports the conclusion that Claimant was an employee. Upon review, we reverse.

## I. Background

Claimant works in the healthcare industry as a "direct care worker." Reproduced Record (R.R.) at 57a. Company is a healthcare staffing agency that matches healthcare workers with its clients, which are various hospitals and nursing homes.

Claimant began his association with Company in May 2005, and, as of 2011, he continued to perform services for Company's clients.

In June 2011, Claimant applied for unemployment compensation. When compensation was granted, Company appealed, asserting Claimant was an independent contractor. A hearing ensued before a referee.

At the hearing, Company, represented by counsel, presented the testimony of Verna Pomar, its Director of Operations. Company also submitted an "Independent Contractor Agreement," signed by Claimant and a representative of Company. R.R. at 67a. Claimant did not appear at the hearing.

After the hearing, the referee issued a decision in which he affirmed the grant of unemployment compensation. In so doing, the referee made the following relevant findings:

1. Claimant worked from May 19, 2005 through the present and beyond as a direct care worker. He is paid $15 an hour.

2. Quality Care Options (hereafter Quality) has a number of clients who will occasionally require direct care workers.

3. Quality has a list of individuals who have signed independent contractor agreements with it.

4. The individuals are all required to carry and maintain their own certifications.

5. When a client is in need of a direct care worker, Quality will contact an individual on its list and offer the work to the individual.

6. The individual is free to accept or refuse the offer.

7. There is no adverse result for an individual who refuses a particular offer.

8. If an individual accepts an offer, the individual will report to work at the

client location and perform direct care duties as instructed by the client.

9. The individual and the client confirm the number of hours the individual works and submit that statement to Quality.

10. After receiving the statement, Quality prepares an invoice and sends the invoice to the client.

11. The client pays Quality according to the invoice.

12. Quality keeps a share of the money it receives from the client and forwards the balance to the individual.

13. The individual is paid by the hour.

14. The individual performs duties as instructed by the client.

15. The individual is free to register with Quality or any of its competitors.

16. It is common for individuals to be registered with Quality and with other companies.

17. Quality pays the individuals without making any deduction for taxes or any other withholdings and reports income to the government on a Form 1099.

18. As part of his association with Quality, Claimant signed an independent contractor agreement.

19. A direct care worker is not an occupation that is normally independent.

Referee's Dec., 9/28/11, Findings of Fact (F.F.) Nos. 1–19. Further, in his discussion the referee stated:

> There are two tests to determine whether somebody is or is not self-employed. The first deals with the degree of control Quality has over the individual over the way the individual performs their [sic] work. The second tests [sic] deals with whether the individual is independent. The second test also includes an element into whether the individual's work is something normally considered to be independent.
>
> Turning to the first element, the Referee finds there are a number of factors that favor employment. First amongst them is the fact the direct care worker is subject to the orders of the client. Second is the fact the direct care worker is paid by the hour and not the project. Quality has a business model that is virtually identical to the traditional temporary employment agency model. The individuals with whom it contracts are offered work and are assigned as needed.
>
> There are some differences. Principal amongst them is the fact that an individual may decline an assignment and does not need a reason for that. Also, the individual is not required to stay in contact with [Q]uality while the individual is not working. These differences are principally because Quality is attempting to set up a business model that would not make them [sic] responsible for unemployment compensation benefits or any other care for the individual when the individual is not working.
>
> Quality does undertake to provide qualified individuals for its clients. That is a service it performs and also reflects to some extent a degree of control over the individuals.
>
> The factors favoring control are slightly fewer in number than those favoring independence, but the factors favoring control are much more important. An individual paid by the hour is much more likely to be an employee than an individual who is paid by the project. The fact that Quality maintains a degree of control in deciding whom it offers assignments to insure they [sic] are qualified for the assignment also reflects a degree of control. Finally, the fact that the direct care worker performs its

duties as instructed by the client reflects the 'borrowed employee' structure common to temporary employment agencies.

The second element deals with whether the individual is independent. It is certainly true that the individual direct care worker in the business model created by Quality is independent in the sense they [sic] may offer the same or similar services to any of Quality's competitors. However, the occupation of direct care worker is not customarily considered independent. A direct care worker is not permitted to have his own customers. A direct care worker is permitted to do only those things authorized by others in the medical field that have licenses to do so.

Referee's Dec. at 3. Ultimately, the referee determined that Section 402(h) of the Unemployment Compensation Law (Law) [1] (relating to self-employment) did not preclude a grant of unemployment compensation to Claimant.

Company appealed, and the Board affirmed, adopting and incorporating the referee's findings and conclusions. A request for reconsideration was thereafter denied. This appeal by Company followed.

## II. Contentions

On appeal,[2] Company argues the Board erred in failing to acknowledge that Claimant is an independent contractor within the meaning of Section 402(h) of the Law. It asserts the referee's factual findings were inaccurate and inconsistent with the record evidence.

Company further contends the Board did not discuss the referee's findings, did not recognize key inconsistencies and did not make any credibility determinations. Company points out that Claimant did not appear at the hearing and did not present any evidence. As such, Company maintains it presented the only credible record evidence, and this evidence establishes Claimant was an independent contractor. Specifically, Company contends the testimony of its representative and its documentary evidence support a determination that Company did not control the manner in which Claimant performed his duties.

Additionally, Company maintains the Board's decision and the referee's findings are at odds with an earlier Board decision that recognized that another direct care worker affiliated with Company was an independent contractor. Because Claimant is an independent contractor, Company argues, he should not be eligible for unemployment compensation under Section 402(h) of the Law.

## III. Discussion

### A. Two-Pronged Test

Pursuant to Section 402(h) of the Law, an employee is ineligible for benefits for any week in which he is engaged in "self-employment." The Law does not define the term "self-employment"; however Section 4(*l*)(2)(B) of the Law defines "employment" as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the perform-

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as *amended,* 43 P.S. § 802(h).

2. Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Oliver v. Unemployment Comp. Bd. of Review,* 5 A.3d 432 (Pa.Cmwlth.2010) (*en banc*).

ance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). Section 4(*l*)(2)(B) of the Law creates a presumption that an individual working for wages is an employee. *Res. Staffing, Inc. v. Unemployment Comp. Bd. of Review,* 995 A.2d 887 (Pa. Cmwlth.2010) (*Resource Staffing II*).

The burden to overcome the "strong presumption" that a worker is an employee rests with the employer. *Kurbatov v. Dep't of Labor & Indus., Office of Unemployment Comp., Tax Servs.,* 29 A.3d 66, 69 (Pa.Cmwlth.2011). To prevail, an employer must prove: (i) the worker performed his job free from the employer's control and direction, and (ii) the worker, operating as an independent tradesman, professional or businessman, did or could perform the work for others, not just the employer. *Id.* "[T]his two-pronged test is conjunctive and both prongs must be satisfied in order for persons rendering services for wages to be considered independent contractors." *Id.* at 70 (quoting *Electrolux Corp. v. Dep't of Labor & Indus., Bureau of Employer Tax Operations,* 705 A.2d 1357, 1360 (Pa. Cmwlth.1998)).

A determination as to the existence of an employer/employee relationship is a question of law that depends on the unique facts of each case. *Res. Staffing, Inc. v. Unemployment Comp. Bd. of Review,* 961 A.2d 261 (Pa.Cmwlth.2008) (*Resource Staffing I*). As to questions of law, our scope of review is plenary, and our standard of review is *de novo. Tech One Assocs. v. Bd. of Property Assessment, Appeals & Review of Allegheny Cnty.,* — Pa. —, 53 A.3d 685 (2012).

### B. First Element

As to the first element, findings related to the actual working relationship between worker and employer determine whether this element is satisfied. *Kurbatov.*

In analyzing the issue of control, courts consider factors such as: whether there was a fixed rate of remuneration; whether taxes were withheld from the claimant's pay; whether the employer supplied the tools necessary to carry out the services; whether the employer provided on-the-job training; whether the employer set the time and location for work; and, whether the employer had the right to monitor the claimant's work and review performance. *Res. Staffing II.* No single factor is controlling; therefore, the ultimate conclusion must be based on the totality of the circumstances. *Pasour v. Unemployment Comp. Bd. of Review,* 54 A.3d 134 (Pa. Cmwlth.2012). Also, because each case is fact specific, all of these factors need not be present to determine the type of relationship that exists. *Osborne Assocs., Inc. v. Unemployment Comp. Bd. of Review,* 39 A.3d 443 (Pa.Cmwlth.2012).

Turning to the facts of this case as they pertain to whether the worker performed the job free from the employer's control and direction, we recognize the following:

- no taxes were withheld from Claimant's pay (F.F. No. 17);
- Claimant was paid $15.00 an hour (F.F. No. 1);
- Claimant and the *client* confirm the number of hours of work needed and submit a statement to Company (F.F. No. 9);
- the Company contacts Claimant to offer him work when a client is in need of his services (F.F. No. 5);

- Claimant performs the duties as instructed by the *client* (F.F.Nos.8, 14)[3];
- Claimant was required to carry and maintain his own professional certification (F.F. No. 4).

In addition, Company's representative presented unrebutted testimony that Claimant was required to pay for and pass a background check, that Claimant supplied any materials needed to perform the work, and that Claimant was not reimbursed for travel expenses. R.R. at 59a, 60a, 63a.

Based on the factual findings and unrebutted evidence set forth above, we conclude the Board erred when it determined Company failed to prove Claimant performed services free from Company's control or direction. There is no dispute that it is the client, not Company, who controls the time, place and manner of services. Also, no evidence was presented that Claimant was supervised by Company; rather, Company offered direct evidence that the client facility supervised Claimant and evaluated Claimant's performance. R.R. at 60a, 63a.

Although the existence of the "Independent Contractor Agreement" is not, by itself, dispositive, it is a significant factor to be considered. *Stage Road Poultry Catchers v. Dep't of Labor & Indus., Office of Unemployment Comp., Tax Servs.*, 34 A.3d 876 (Pa.Cmwlth.2011); *Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786 (Pa.Cmwlth.), *appeal denied*, 599 Pa. 712, 962 A.2d 1198 (2008). Here, the agreement indicates that Claimant would use his best efforts in performing services for the client, and Company would not control, direct or supervise Claimant in performing his duties for the client. R.R. at 67a. The Board erred when it concluded otherwise.

Analogous is our decision in *Resource Staffing II*. There, a consulting agency placed the claimant with a "client" company pursuant to a contractor agreement. *Id.* at 889. Among other things, the Board determined the consulting agency failed to meet its burden of proving it did not exercise control over the claimant's work. On appeal, this Court disagreed. We concluded the record, including the claimant's contractor agreement, revealed the claimant had discretion to control the manner of his work and the client dictated the hours and

3. The Independent Contractor Agreement states, as pertinent (with emphasis added):

> WHEREAS, [Company] is a Pennsylvania corporation engaged in the business of brokering services to various entities desiring those services, and [Company] contracts with Independent Contractors *for the purpose of rendering such services to Client facility or at any place directed by Client.* [*Company* ] is not a clinical facility and *will not provide* any clinical services or treatments of any kind to Client's patients nor provide *direction or supervision to Independent Contractor.* Contractor desires to use such brokerage services of [Company] to secure work as an Independent Contractor, licensed / certified, in his/her field of professional specialty.
>
> * * * *
>
> 1. Independent Contractors—CONTRACTOR is a self-employed independent contractor, responsible for his/her own actions and *using his/her best efforts while performing services for Client. [Company] shall have no control, direction, and supervision or influence whatsoever over the actions of the Contractor in performing his/her duties for Client.* It is intended that neither Client nor [Company] shall be responsible for payment of any taxes, insurance premiums, licensing fees, or any other expenses incurred in connection with their [sic] professional business, including but not limited to FICA, Federal, State and Local income taxes, unemployment and /or Workmen's Compensation taxes and insurance, disability insurance, professional liability insurance and/or organization dues.

Reproduced Record (R.R.) at 67a.

work locations, provided the claimant with his daily assignments and evaluated the claimant's performance. Thus, we held that, contrary to the Board's determination, the consulting agency did, in fact, prove the claimant was not under its direction and control.

As in *Resource Staffing II,* we conclude the Board erred in determining Company failed to prove that Claimant was under its direction or control. As detailed above, the client, not Company, controlled the time, place and manner of Claimant's services. Further, the client, not Company, supervised Claimant and evaluated his performance.

Moreover, we reject as totally inapposite the Board's reliance on various cases for the proposition that Company has a business model that is similar to the traditional temporary employment agency model followed by Manpower, Inc.[4] Remarkably, none of the cases upon which the Board relies involved the distinction between an independent contractor and an employee; rather, in each case the employment status was unquestioned. In addition, there were no independent contractor agreements in any of those cases.

### C. Second Element

As to the second element, two important factors are considered. In particular, we look to whether the individual was capable of performing the activities in question for anyone who wished to avail themselves of the services, and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services. *Pasour; Res. Staffing II.*

As to whether the worker was engaged in an independent trade, our Supreme Court analyzed this element in *Danielle Viktor, Ltd. v. Department of Labor & Industry, Bureau of Employer Tax Operations,* 586 Pa. 196, 892 A.2d 781 (2006). There, the Court considered whether limousine drivers were independent contractors or employees. Concluding the drivers were independent contractors, the Supreme Court affirmed this Court and explained:

> *The Commonwealth Court did not rest its determinations solely on the fact that [the][d]rivers were free to work for more than one company. The court considered the facts that [the][d]rivers were hired on a job-to-job basis, could refuse any assignment, and were not dependent on [the limousine companies] for ongoing employment....* Further, the court also specifically determined that [the][d]rivers suffered a risk of loss if expenses exceeded income....

*Id.* at 223, 892 A.2d at 797–98. Where an employee is free to accept or reject an assignment, the individual generally is not considered to look to a single employer for the continuation of such services. *Stage Road Poultry Catchers.*

Here, the facts regarding whether Claimant was engaged in an independent trade are as follows:

- Claimant was free to register with Company or any of its competitors

4. The Board relies on one reported case, *Department of Labor and Industry, Office of Employment Security v. Unemployment Compensation Board of Review,* 88 Pa.Cmwlth. 519, 501 A.2d 297 (1985) (Manpower's request for relief from charges for benefits paid to former employer), and on two unreported cases, *Medina v. Unemployment Compensation Board of Review,* (Pa.Cmwlth., No. 1696 C.D.2011, filed April 24, 2012) (unreported) (claimant voluntarily terminated employment with Manpower without cause of necessitous and compelling nature), and *Tilson v. Unemployment Compensation Board of Review,* (Pa.Cmwlth., No. 288 C.D.2010, filed October 6, 2010) (unreported) (same).

(F.F. No. 15)[5];

- It is common for individuals to be registered with Company and with other companies (F.F. No. 16);
- Claimant was free to accept or reject assignments with no adverse consequences (F.F.Nos.6, 7).

Also, Company's representative presented unrebutted testimony that "the majority" of direct care workers "probably have a full time job someplace else, or there are—with other agencies similar to ours, so they can work for whoever they want to work for." R.R. at 59a. In fact, she testified Claimant worked for another employer. *Id.* To that end, at the hearing, the referee admitted a letter from Claimant, which indicates Claimant was laid off from his "full time employer[,]" a different entity than Company, and that Company "is simply an agency that I have done work for in the past as an independent contractor." R.R. at 50a; Referee's Ex. 2.

We conclude the Board erred when it determined Company failed to prove Claimant was engaged in an independent trade. First, Claimant was not barred from providing direct care services through another agency. Second, Claimant could refuse any assignment from Company. Finally, the record supports a conclusion that Claimant was not dependent on the income received from Company. Indeed, Claimant worked for another entity that he considered his "full time employer." R.R. at 50a, 59a.[6]

For all the foregoing reasons, we conclude the Board erred in determining Claimant was an employee of Company. Therefore, we reverse.

## *ORDER*

**AND NOW,** this 14th day of December, 2012, the order of the Unemployment Compensation Board of Review is **REVERSED.**

5. Paragraph 7 of Claimant's "Independent Contractor Agreement" states (with emphasis added):

> **7. Exclusivity**—Contactor agrees not to contract with another agency to work at a Facility *that was introduced as a result of an assignment scheduled through [Company],* if Contractor had not work[ed] at such facility for six (6) months prior and further agrees not to accept assignments through another agency *to work at [Company's] client facilities for a period of six (6) months.*

R.R. at 68a. Thus, although Claimant was prohibited from providing services to clients he was introduced to by Company in certain specified circumstances, Claimant was not prohibited from providing services through another agency. This is similar to a non-compete clause persuasively discussed in the unreported case of *May I Help You, Inc. v. Unemployment Compensation Board of Review,* (Pa.Cmwlth., No. 1820 C.D.2009, filed March 16, 2010) (unreported) (reversing Board's determination that part-time caregiver was employee of assigning agency; "Independent Contractor Agreement" with non-compete clause prohibited claimant from competing with agency for client or starting competing business, but did not prohibit claimant from providing caregiver services through another agency).

Moreover, the inclusion of a non-compete clause, by itself, does not establish an employee and employer relationship. *See Res. Staffing, Inc. v. Unemployment Comp. Bd. of Review,* 995 A.2d 887 (Pa.Cmwlth.2010).

6. The referee determined that a direct care worker is not an occupation that is normally independent. In reaching this determination, however, the referee did not focus on the critical facts that Claimant was capable of performing the activities in question for anyone who wished to avail themselves of his services, and that Claimant was not compelled to look only to Company for the continuation of his services, despite the fact that the referee made factual findings favorable to Company on these issues. *See* F.F. Nos. 6–7, 15–16.

DISSENTING OPINION BY Judge McCULLOUGH.

Because the record reflects that Quality Care Options (Company) was not the separating employer for purposes of determining whether Jamal Mack (Claimant) is eligible for unemployment compensation, I cannot agree with the Majority that the central issue in this case concerns Claimant's status *vis-a-vis* Company. Accordingly, I respectfully dissent.

The record shows that Claimant separated from his employment with National Comprehensive Center for Fathers (NCCF) on or about June 16, 2011. (R.R. at 7, 50, 59.) Claimant has been associated with Company since May 2005, and he continues to perform healthcare services for its clients pursuant to an independent contractor agreement. (Finding of Fact No. 1 [1]; R.R. at 7, 11–13, 57.) Claimant acknowledged this ongoing relationship to the bureau; a week after filing his claim for benefits, he reported earnings from Company. (R.R. at 6–7.) As a result, and despite the fact that the bureau's own records state that Claimant continues to work for Company,[2] the bureau identified Company as a separating employer. (R.R. at 7.) Company responded to bureau inquiries by stating that Claimant was never an employee but instead is an independent contractor who continues to perform work under a current contract. (R.R. at 11–12.) The bureau issued a determination on August 3, 2011, listing Company as the putative employer and holding that Claimant was not ineligible for benefits under section 402(h) of the Unemployment Compensation Law (Law).[3]

Company appealed, and the referee scheduled a hearing for September 20, 2011. Claimant contacted the bureau by letter dated September 6, 2011, which was received by the referee's office the next day, stating as follows:

> Dear Sir:
>
> I am writing regarding the upcoming hearing between myself and the employer Quality Care Options (QCO) scheduled for Tuesday, 9/20/11 at 9 am. There has been a major misunderstanding. I am indeed laid off and entitled to unemployment compensation. However, I am laid off from my full time employer The National Comprehensive Center for Fathers (NCCF). QCO is simply an agency that I have done work for in the past as an independent contractor. They do not owe me unemployment compensation and I would like to withdraw the appeal (which I did not initiate).
>
> NCCF is aware of my unemployment claim and they are more than willing to pay the funds that are owed based on my lay off. In fact, I was under the impression that the unemployment compensation monies were being provided by NCCF. If you need further information from my full time employer NCCF, please feel free to contact the Chief Operating Officer, Natasha Watson at 215–717–4021. Hopefully this correspondence will provide clarity and that there will be no interruption in my benefits.

1. "Claimant worked from May 19, 2005 through the present and beyond as a direct care worker. He is paid $15 an hour." (Finding of Fact No. 1.)

2. The documentation submitted to the bureau by Company reflects Claimant's earnings for the period from January 5, 2011 (six months before his separation from NCCF) through July 13, 2011. (R.R. at 13.)

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(h).

Thank you,
Jamal C. Mack
[XXX-XX-XXXX].

(R.R. at 50.) A handwritten comment on the letter indicates that someone left a detailed voice message on September 8th.

Claimant did not appear at the September 20th hearing. However, the referee took note of Claimant's letter during his review of bureau documents to be included in the record: "[Document] 2 is something from Mr. Mack saying he doesn't want to be involved anymore. Apparently he thinks he suffered—it wasn't his appeal to withdraw. And then the Service Center documents...." (R.R. at 56.) The information concerning Claimant's full time employer, which already was contained in the bureau's claim record, (R.R. at 7), was never addressed at the hearing.

Verna Pomar, Company's director of operations, testified that Claimant began his association with Company in May 2005 and that he continues to accept assignments as a health care technician under an independent contractor agreement. (R.R. at 57–65.) She described the terms and conditions under which Claimant worked, which the referee summarized in his findings. (Majority's op. at 657–58.) Essentially, Company is paid for placing individuals with whom it has independent contractor agreements with clients who occasionally require direct care workers. Company's clients control the time, place, and manner of Claimant's services.

The referee determined that Claimant was not self-employed. Specifically addressing the issue of whether Claimant was customarily engaged in an independent occupation or business, the referee noted that direct care workers are not permitted to have their own customers but are permitted to perform only those tasks that are authorized by licensed medical providers. (Referee's decision p. 3.) Company appealed, and the Board affirmed the referee's decision, adopting the referee's findings and conclusions of law.

The Majority reverses the Board's decision on the grounds that Company presented sufficient evidence to demonstrate that Claimant was an independent contractor and, therefore, ineligible for compensation under section 402(h) of the Law. In doing so, the Majority acknowledges Claimant's assertion that he was laid off from his full time employer,[4] but only after disregarding that assertion and employing the "either/or analysis" that we held in *Silver v. Unemployment Compensation Board of Review,* 34 A.3d 893 (Pa.Cmwlth.2011), was inapplicable to similar circumstances. I submit that the record here, as in *Silver,* requires acknowledgment that an employee can be eligible for unemployment compensation following a valid separation and not necessarily be rendered ineligible for benefits based on income subsequently earned as an independent contractor. "Obviously an unemployed individual can accept occasional assignments without being 'customarily engaged in an independently established trade, occupation, profession or business.'" *Id.* at 896 n. 7. In other words, a finding that Claimant was an independent contractor for Company does not compel the conclusion that Claimant is self-employed for purposes of eligibility under section 402(h) of the Law.

In determining whether an individual is ineligible for benefits under section 402(h) of the Law on the basis of self-employment, we apply the two-part test for em-

4. "Indeed, Claimant worked for another entity that he considered his 'full time employer.'" (Majority op. at 663.)

ployment contained in section 4(1)(2)(B) of the Law, 43 P.S. § 753(1)(2)(B), and inquire whether: (1) the individual is free from direction and control over the performance of his services; and (2) the individual is customarily engaged in an independently established trade, occupation, profession, or business. This Court has consistently held that, before a claimant will be declared to be self-employed, *both* elements of section 4(1)(2)(B) must be satisfied. *Buchanan v. Unemployment Compensation Board of Review*, 135 Pa. Cmwlth. 567, 581 A.2d 1005 (1990). Normally the employer has the burden of proving that a claimant is self-employed. *Teets v. Unemployment Compensation Board of Review*, 150 Pa.Cmwlth. 419, 615 A.2d 987 (1992).[5]

Here, the evidence cited by the Majority supports a determination that Claimant was an independent contractor, but falls short of that necessary to satisfy the second prong of that test. *See Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593 (Pa.Cmwlth.2012) (en banc) (evidence that the claimant performed work on an as-needed basis was insufficient to demonstrate that the claimant was customarily engaged in an established trade, occupation or business); *Silver* (same; the claimant's relationship was ongoing, and the either/or analysis was not properly applied); *Kirk v. Unemployment Compensation Board of Review*, 57 Pa. Cmwlth. 92, 425 A.2d 1188 (1981) (a claimant embarks upon self-employment under section 402(h) when he performs a positive act of establishing an independent business enterprise); *Miller v. Unemployment Compensation Board of Review*, 45 Pa.

Cmwlth. 570, 405 A.2d 1052 (1979) (a claimant is generally considered to embark upon self-employment only where he actively participates in the operation of a private enterprise or performs a positive act to establish an independent business).

We recently held that evidence that a claimant is customarily engaged in an independently established trade or business is an absolute prerequisite to a determination that a claimant is ineligible for compensation based on his self-employment under section 402(h) of the Law. *Jia v. Unemployment Compensation Board of Review*, 55 A.3d 545 (Pa.Cmwlth.2012). While *Jia* involved only one putative employer, the reasoning underlying its holding is equally applicable here, and in every other case where the status of the putative employer is, arguably, immaterial. Further, in cases such as this, the fact that Claimant did not participate in the hearing is likewise immaterial, because Claimant bore no burden of proof and no evidence of an independently established trade or occupation was presented warranting rebuttal.

Accordingly, although I agree that the Board erred in concluding that Claimant is an employee of Company, I would affirm the Board's determination that Claimant is not ineligible for benefits under section 402(h) of the Law.[6]

---

5. In instances where the bureau initiates proceedings that result in a suspension of benefits because of self-employment, the bureau carries the burden. *Teets.*

6. We may affirm an agency's decision on other grounds where grounds for affirmance exist. *Turner v. Unemployment Compensation Board of Review*, 899 A.2d 381 (Pa.Cmwlth. 2006).