IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Farinhas Logistics, LLC,                  :
                    Petitioner             :
                                           :   No. 1694 C.D. 2015
          v.                               :
                                           :   Submitted: March 4, 2016
Unemployment Compensation Board            :
of Review,                                 :
                    Respondent             :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  December 5, 2016


          Farinhas Logistics, LLC (Putative Employer) petitions for review of the
August 13, 2015 order of the Unemployment Compensation Board of Review
(Board), which reversed a referee's decision, finding that Eliseos A. Anenoglou
(Claimant) was eligible for unemployment compensation benefits pursuant to
sections 401(a), 404, and 4(l)(2)(B) of the Unemployment Compensation Law
(Law).[1]  For the following reasons, we vacate and remand.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§§801(a), 804, 753(l)(2)(B).

**Facts and Procedural History**

The primary question in this case involves whether Claimant was an employee or an independent contractor. Claimant performed services for Putative Employer as a sales agent from August 13, 2013, to May 24, 2014. (R.R. at 27a; Board's Finding of Fact at No. 21.) After learning that he was fired, Claimant filed an application for benefits with the local service center, which found that Claimant had base year wages of $200.00 paid by a company called Randstad; thus, the service center determined that Claimant did not financially qualify for benefits under sections 401(a) and 404 of the Law.[2] Claimant appealed, contending that the wages received from Putative Employer should be included as base year wages. On January 29, 2015, a referee held a hearing, at which Claimant appeared and an agency representative participated by telephone. (R.R. at 17a-19a.)

Claimant testified that he worked for Putative Employer from approximately August of 2013 to July of 2014. Claimant further testified that he entered into a confidentiality, non-competition, and non-solicitation agreement (Agreement)[3] with Putative Employer, which identified him as an independent contractor. According to Claimant, the Agreement prohibited him from employment in a similar job for at least one year after his employment ended. Claimant related

---

[2] Section 401(a) of the Law provides that compensation shall be payable to any employee who is or becomes unemployed, and who has, within his base year, been paid wages for employment as required by section 404(c) of the Law, which sets forth the financial eligibility requirements for securing compensation. 43 P.S. §§801(a), 804(c).

[3] The July 27, 2013 Agreement was between Claimant and "Jorge Farinhas, Independent Sales Agent for Landstar, in his capacity as owner and operator of the independent sales agency, the names and business identity of which may change over time." (R.R. at 102a.) Claimant and Farinhas executed the Agreement. (R.R. at 103a.)

that he was referred to and treated as an employee except when problems arose, when he was then called an independent contractor. Claimant testified that near the end of his employment, business slowed and became so bad that he was no longer making money; around the same time, as he placed calls to his customers, they informed Claimant that he had been fired. Claimant stated that it was at a later date that Putative Employer informed Claimant that he was terminated. Claimant submitted documents detailing the commissions he earned from Putative Employer.[4] Further, he submitted his income tax returns and stated that he paid taxes on the income received from Putative Employer. Additionally, Claimant stated he only worked for Putative Employer during his base year. (R.R. at 27a-31a.)

Andrea Novak (Novak), tax agent, stated that Claimant's documents indicated that a company called Landstar provided the commissions and did not identify Claimant as the recipient of those commissions. Further, Novak stated that Claimant reported no income on his tax returns from either Landstar or Putative Employer.[5] (R.R. at 24a, 32a.)

By decision and order dated January 29, 2015, the referee affirmed the local service center's determination denying Claimant benefits. The referee found, in relevant part:

> 4. The claimant asserts he was employed by [Putative Employer] from August 2013 until July 2014.

---

[4] The documents were titled "Agent Commission Statements" and identified Landstar Ranger, Inc. (Landstar) as the agent providing the commissions and Putative Employer as the contractor receiving the commissions.

[5] The income reported on Claimant's tax returns was consistent with the commission amounts shown on the statements but Claimant was paid by and issued 1099s from Ryan Huber as to that income. (R.R. at 47a-106a.)

3

5. The claimant submitted commission/incentive detail reports from this time of employment.

6. The reports do not have any identification information pertaining to the claimant or with the amount of gross wages received for any type [of] work performed.

(Referee's Findings of Fact Nos. 4-6.) The referee indicated that although Claimant testified to base year employment, he was unable to provide any corroborating credible documentation to establish earnings from this employment. (Referee's decision at 2.) Without such evidence, the referee determined, Claimant did not meet his burden to show eligibility for benefits. *Id*.

On January 30, 2015, Putative Employer called the referee's office claiming insufficient notice of the hearing. The report of the telephone call noted: "Jorge Farinhas called to say he was not the employer in this appeal. [H]e just received his hearing [notice] the day of the hearing after the hearing was held. He said the claimant's employer was Landstar Ranger Inc. not Farinhas Logistics. He is an independent Sales Agent for Landstar only." (Original Record, Item No. 11.) Additionally, on February 3, 2015, the referee's January 29, 2015 decision was appealed by Claimant. On February 27, 2015, Claimant submitted additional information regarding his appeal, i.e., two 2014 1099 forms (one from Ryan Huber and one from Keep On Trucking, LLC), which, he asserted, connected the pay stubs (agent commission statements) to his tax records. (Original Record, Item No. 13.)

By order dated May 8, 2015, the Board remanded to the referee for further hearing. Specifically, the Board stated:

> The purpose of this hearing is to allow a representative from [Putative Employer] the opportunity to present testimony and evidence on the issue of **whether or not the claimant**

4

**was an employee or was an independent contractor under Section 4(l)(2)(B) of the Law[6] when he performed services for [Putative Employer].** [Putative Employer] clearly was not given sufficient notice of the January 29, 2015, hearing as the notice was mailed to it on January 27, 2015.

(Board's order dated May 8, 2015) (emphasis in original). Importantly, the Board's order also provided that "[t]he scope of further hearings shall be governed by any memorandum of the Board's legal staff which accompanies the Notice of Hearing." *Id.*

The Board's legal staff's memorandum, dated May 6, 2015, requested the referee to schedule an additional hearing for the purpose identified in the Board's order. However, the remand memo went on to provide, in pertinent part:

Answers to the following questions, **in addition to the above information,** would be helpful:

7. Can the Referee elicit from the parties detailed testimony explaining the relationship between them in the context of the two prong independent contractor test under Section 4(l)(2)(B) of the Law?

8. Can the parties provide precise information concerning the moneys paid to the claimant by [Putative Employer] during the claimant's base year of August 1, 2013, through July 31, 2014?

_____

[6] Section 4(l)(2)(B) provides that an individual performing services is presumed to be an employee unless the employer satisfies a two-prong test to show that the individual was an independent contractor. 43 P.S. §753(l)(2)(B).

5

9. Do the numerous stubs already placed in the record reflect payments to the claimant for his services for [Putative Employer]?

(Original Record, Item No. 14) (emphasis in original).

A remand hearing was subsequently held on May 27, 2015, at which Putative Employer's owner, Jorge Farinhas (Farinhas), and Putative Employer's witness, Ryan Huber (Huber), appeared and offered testimony. The Claimant, however, did not appear at this hearing. (R.R. at 5a, 10a-11a, 13a, 33a-34a.)

Huber testified that approximately 1,000 agencies work for a trucking company called Landstar, which has a fleet of 9,200 trucks. Huber stated that Putative Employer was one such agency, and Putative Employer had a contract with Landstar to provide services as an independent sales agent. Huber asserted that he was an independent sales agent for Putative Employer, and that Claimant was an independent contractor for Huber, rather than Putative Employer. Huber indicated that he entered into an agreement with Claimant, and submitted the Agreement identifying its parties as Claimant and Putative Employer. According to Huber, the Agreement was really between Claimant and Huber but, in error, he neglected to change the wording of the Agreement to reflect the same. (R.R. at 36a-39a, 44a.)

Huber confirmed that he and Claimant had the same duties as sales agents. Their job was to find customers that needed freight moved and connect them with Landstar trucks to transport the freight. In order to move the freight, Huber explained that sales agents and Landstar's drivers used a load board on Landstar's website. Sales agents were responsible for posting customers' freight on the load board, and then Landstar's drivers looked to the load board to book loads. The sales agent earned a commission when a load was booked. (R.R. at 36a-37a, 39a-41a.)

Huber acknowledged that he provided training to Claimant on how to find customers and how to use Landstar's website over the phone and computer with voiceover instant messenger. After such training, Huber noted that Claimant went on to develop his own customer relationships and business. According to Huber, Claimant was completely independent as to how the work was performed. Further, he stated that Claimant could determine the hours worked, was not required to complete a timesheet, and did not have any monetary or other deadlines. Additionally, Huber indicated that Claimant was prohibited under the Agreement from working with other agencies or brokerage firms for six months after employment ended. (R.R. at 40a-41a.)

As to Claimant's commissions, Huber stated that the percentage of commissions was not negotiated and explained:

> [I]t's basically not negotiated at all. it's [sic] – we have our set practice of how we bring on new agents, and [Claimant] got the percentage that we basically, as – [Farinhas] is agency owner and myself, as the business partner, discussed what we're going to bring agents on at, and that's the percentage we gave him.

(R.R. at 40a.) Huber testified that he, and not Putative Employer, paid Claimant, payment was made to Claimant by checks for specific amounts, and he did not give Claimant pay stubs. All checks were written out of Huber's personal account, except for the last check which was from Huber's recently-established business account ("Keep On Trucking, LLC"). Huber issued Claimant 1099s and used his social security number to reflect the payments made out of his personal account. One 1099 was issued to Claimant from his business and utilized its EIN number. Checks were issued to Claimant based upon the information contained in the commission statements, which were released by Landstar on a weekly basis. Huber testified that

7

the commission statements reflected the commissions earned and the loads upon which Claimant was paid, but stated that they did not evidence actual payment. In addition to the Agreement, Huber submitted copies of 1099s issued to Claimant and images of checks paid to Claimant for commissions. (R.R. at 27a, 39a, 42a-44a, 102a-151a.)

Putative Employer, through Farinhas, testified that Claimant was never an employee of Putative Employer. Rather, Putative Employer asserted that Claimant was a subcontractor for Huber. Putative Employer stated that it never issued a check to Claimant and that Huber made all payments to Claimant. Putative Employer explained that it is identified at the top of the commission statements as owner of the agency and reiterated that the commission statements did not evidence payment to Claimant; however, Putative Employer acknowledged that the statements gave Claimant a general idea of what amounts he would be paid. Putative Employer also presented the Agreement. (R.R. at 44a-45a.)

By decision and order dated August 13, 2015, the Board reversed the decision of the referee. Based upon the evidence presented at both hearings, the Board made the following factual findings:

1. On December 5, 2014 the [C]laimant filed an application for benefits dated November 30, 2014 establishing a base year from July 1, 2013 through June 30, 2014.

2. During the [C]laimant's base year he received $200.00 in wages in the 3rd quarter of 2013, working for a company call Randstad.

3. During the [C]laimant's base year he also entered into a relationship with [Putative Employer] wherein he agreed to perform services as a sales agent.

8

4. [Putative Employer] is an independent sales agency and has a contract with a transportation company called Landstar Global Logistics (Landstar).

5. Landstar has a fleet of thousands of individual truck drivers who own and operate their own trucks.

6. [Putative Employer] has contracted with Landstar to find customers that need freight transported for Landstar's drivers.

7. Landstar has a website to facilitate linking the drivers with the freight customers obtained by the sales agencies like [Putative Employer].

8. Drivers book their loads from the Landstar website called the load board.

9. The [C]laimant had access to Landstar's website because of his association with [Putative Employer].

10. The [C]laimant signed a Confidentiality, Non-Compete and Non-Solicitation agreement on July 23, 2013 with [Putative Employer].

11. The [C]laimant was paid by commission.

12. The amount of commission paid was a set rate established by [Putative Employer] and there was no negotiation.

13. No taxes were withheld and the [C]laimant received a 1099 for tax purposes.

14. The [C]laimant worked from home using his own computer, had no set hours and was not required to submit a timesheet.

15. The [C]laimant received training from [Putative Employer] on how to use Landstar's website as well as training on how to solicit customers.

16. The [C]laimant was prohibited from working for other sales agencies or other brokerage firms that compete with [Putative Employer].

(Board's Findings of Fact Nos. 1-16.)

The Board found that Claimant last performed services for Putative Employer on May 24, 2014, and received commissions while performing services for Putative Employer, as follows: $1,023.91 (3rd quarter of 2013), $3,686.75 (4th quarter of 2013), $3,430.89 (1st quarter of 2014), and $4,895.54 (2nd quarter of 2014). The Board determined that Claimant had more than 26 credit weeks in his base year, with total base year wages of $13,237.00. (Board's Findings of Fact at Nos. 17-22.)

Examining the status of Claimant's relationship with Putative Employer under the two-pronged test set forth in section 4(l)(2)(b) of the Law, the Board concluded that Putative Employer failed to satisfy either prong of the test to show that Claimant was an independent contractor. As to the first prong of the test relating to control, the Board stated:

> [T]he Board notes that no taxes were withheld and that the claimant received a 1099 for tax purposes. Moreover, the claimant worked from home on his own computer and was free to set his own hours. The website, however, which connected the claimant to the drivers belonged to Landstar and the claimant could only access it because of his association with [Putative Employer]. Also, the claimant was provided training on how to operate the website as well as training on how to solicit customers for business. Finally, there was no negotiation regarding the claimant's rate of pay. Under these circumstances the Board concludes that the claimant was not free from the direction and control of [Putative Employer].

10

(Board's decision at 3.) Regarding the second prong, the Board concluded that Claimant was not customarily engaged in an independently established business, trade, or profession, and reasoned:

> Again, the website which connected the claimant to the drivers belonged to Landstar and the claimant could only access it because of his association with [Putative Employer]. Moreover, the claimant was specifically prohibited from working for other sales agencies or other brokerage firms that competed with [Putative Employer]. Thus, he was not free to provide his services as a sales agent to anyone who wished to avail themselves of such services.

*Id*. at 3-4. Hence, the Board determined that Claimant's services for Putative Employer were not excluded from covered employment under section 4(l)(2)(B) of the Law, and that Claimant was eligible for benefits under sections 401(a), 404, and 4(l)(2)(B).

Putative Employer filed a request for reconsideration of the Board's decision, which was denied by order of the Board dated September 16, 2015, and Putative Employer appealed.

On appeal,[7] Putative Employer maintains that the Board erred in determining that Claimant was an employee, rather than an independent contractor, because it satisfied both prongs of section 4(l)(2)(B). Within this argument, Putative Employer alleges that Findings of Fact Nos. 9 and 15 are not supported by substantial

---

[7] Our review is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Staffmore, LLC v. Unemployment Compensation Board of Review*, 92 A.3d 844, 847 (Pa. Cmwlth. 2014).

evidence. In response, the Board contends that substantial evidence supports its findings and that Putative Employer satisfied neither prong of the test. According to the Board, it properly determined that Claimant was not excluded from covered employment under section 4(l)(2)(B) and, therefore, appropriately included Claimant's wages from Putative Employer in his base year wage calculations under sections 401(a) and 404 of the Law.[8]

## Discussion

Initially, we note that the Board is the ultimate factfinder in unemployment compensation proceedings; therefore, it is "solely for the [Board] to assess credibility[,] to resolve conflicts in the evidence ... [and] to determine what weight to give to any evidence." *Mulberry Market, Inc. v. City of Philadelphia, Board of License & Inspection Review*, 735 A.2d 761, 767 (Pa. Cmwlth. 1999). Further, the Board's findings are conclusive on appeal where the record, taken as a whole, contains substantial evidence to support its findings. *Oliver v. Unemployment Compensation Board of Review*, 5 A.3d 432, 438-39 (Pa. Cmwlth. 2010). Thus, our

---

[8] Claimant, acting *pro se*, filed a notice of intervention and submitted a brief on appeal. Putative Employer filed an application for relief requesting that Claimant's brief be stricken because it is replete with factual matters not contained in the record below and Claimant's legal arguments are premised upon this mischaracterization of the evidentiary record. By order dated February 18, 2016, we directed that this issue be resolved with the merits. Upon review, we agree with Putative Employer that Claimant's brief is permeated by factual references that are not part of the record or testimony below. It is well-established that our review is limited to the existing record. *See* Pa.R.A.P. 1551(a); *Tener v. Unemployment Compensation Board of Review*, 568 A.2d 733, 738 (Pa. Cmwlth. 1990) (reasoning that this Court's appellate review is restricted to those facts certified in the record). Pa.R.A.P. 2101 provides that "[b]riefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed." Accordingly, we grant Putative Employer's application for relief and strike Claimant's brief.

substantial evidence review is limited to determining whether there is relevant evidence in the record upon which a reasonable mind could base a conclusion, viewing the evidence in the light most favorable to Claimant, as the prevailing party, and giving him the benefit of all logical and reasonable inferences that can be drawn from the evidence. *Clark v. Unemployment Compensation Board of Review*, 129 A.3d 1272, 1275 (Pa. Cmwlth. 2015).

Although the record may contain evidence supporting a finding contrary to that made by the Board, our review is limited to whether the factual findings of the Board are supported by substantial evidence. *Stage Road Poultry Catchers v. Commonwealth, Department of Labor and Industry, Office of Unemployment Compensation, Tax Services*, 34 A.3d 876, 885-86 (Pa. Cmwlth. 2011); *accord Mulberry Market, Inc.*, 735 A.2d at 767 ("[T]he pertinent inquiry is whether there is any evidence which supports the factfinder's factual finding."). Moreover, "[t]he fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994).

Putative Employer contends that the Board erred in determining that Claimant was an employee because it established both prongs of the independent contractor test under section 4(l)(2)(B) of the Law. Additionally, Putative Employer argues that three of the Board's findings, Findings of Fact Nos. 3, 9, and 15, are not supported by substantial evidence.

## Employment Relationship

To be eligible for unemployment benefits, a claimant must show that his wages were earned from employment. 43 P.S. §§801(a), 753(x).[9] Further, section 402(h) of the Law provides that an employee is ineligible for compensation for any week in which he is engaged in self-employment. 43 P.S. §802(h). Although "self-employment" is not defined, we examine the parties' working relationship under section 4(l)(2)(B) of the Law,[10] the purpose of which is to exclude independent contractors from coverage. *Beacon Flag Car Company, Inc. (Doris Weyant) v. Unemployment Compensation Board of Review*, 910 A.2d 103, 107 (Pa. Cmwlth. 2006).

To show that a claimant is a self-employed independent contractor, the employer must satisfy the two-pronged test set forth in section 4(l)(2)(B), which states, in pertinent part:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

---

[9] A claimant's base year wages must have been paid for employment. 43 P.S. §801(a). In addition, "wages" is defined as "all remuneration . . . **paid by an employer** to an individual with respect to his employment." Section 4(x) of the Law, 43 P.S. §753(x) (emphasis added).

[10] Whether an employer/employee relationship exists is a question of law that depends upon the unique facts of each case. *Clark*, 129 A.3d at 1276. Therefore, our scope of review is plenary, and our standard of review is *de novo*. *Quality Care Options v. Unemployment Compensation Board of Review*, 57 A.3d 655, 660 (Pa. Cmwlth. 2012).

43 P.S. §753(l)(2)(B). This section creates a strong presumption that an individual rendering services for wages is an employee. *Kurbatov v. Department of Labor and Industry, Office of Unemployment Compensation, Tax Services*, 29 A.3d 66, 69 (Pa. Cmwlth. 2011). To overcome this presumption, the employer has the burden of demonstrating that the claimant "is not subject to the employer's control and he is engaged in an independently established trade." *Frimet v. Unemployment Compensation Board of Review*, 78 A.3d 21, 25 (Pa. Cmwlth. 2013). Both prongs under section 4(l)(2)(B) must be satisfied for a claimant to be self-employed under the Law; otherwise, the presumption of employment stands. *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893, 896 (Pa. Cmwlth. 2011).

In determining the existence of an employer/employee relationship, the court is required to examine the actual relationship of the parties. *Hartman v. Unemployment Compensation Board of Review*, 39 A.3d 507, 511-12 (Pa. Cmwlth. 2012). We noted that the terminology used by the parties to describe their relationship is not dispositive, *id*., and even a declaration in a contract stating that the claimant is an independent contractor may not necessarily satisfy the independent contractor test of section 4(l)(2)(B), *Clark*, 129 A.3d at 1277 n.11. Moreover, although the existence of a non-compete agreement is not determinative of the issue, the terms of the parties' agreement must be considered. *Kurbatov*, 29 A.3d at 72.

### Two-Prong Test

As noted above, Putative Employer must show that Claimant has been, and will continue to be, free from control or direction over the performance of such services. 43 P.S. §753(l)(2)(B)(a). In analyzing this first prong of the test, we consider the following relevant factors:

> **how the claimant was paid**; **how taxes on the claimant's earnings were paid**; whether the claimant or the person for whom [he] worked supplied tools or equipment necessary to perform the services; **whether the person for whom claimant worked provided on-the-job training**; whether claimant was required to attend meetings or report on [his] work; who set the time and location of the work; whether the claimant's work was subject to supervision or review; the terms of any written contract between the parties; the degree to which the claimant was directed with respect to the work; and whether the claimant was free to refuse work assignments without repercussions.

*Stauffer v. Unemployment Compensation Board of Review*, 74 A.3d 398, 405 (Pa. Cmwlth. 2013) (emphasis added). Importantly, no single factor is controlling and the ultimate conclusion pertaining to control must be based on the totality of the circumstances. *Quality Care Options v. Unemployment Compensation Board of Review*, 57 A.3d 655, 660 (Pa. Cmwlth. 2012). Further, because each case is fact-specific, all of these factors need not be present to determine the type of relationship that exists. *Id.* However, "'[w]hile all of these factors are important indicators, the key element is whether the alleged employer has the *right* to control the work to be done and the manner in which it was performed' . . . an employer-employee relationship likely exists not only where the employer actually exercises control, but also where it possesses the right to do so." *Kurbatov*, 29 A.3d at 70 (quoting *York Newspaper Company v. Unemployment Compensation Board of Review*, 635 A.2d 251, 253 (Pa. Cmwlth. 1993)) (alteration in original).

As to the second prong of the test, Putative Employer must demonstrate that "as to such services[,] such individual is customarily engaged in an independently established trade, occupation, profession or business." 43 P.S. §753(l)(2)(B)(b). To determine whether a claimant is "customarily engaged in an

16

independently established trade, occupation, profession or business," we look at whether the claimant was restricted from performing the services for others and whether anything in the nature of the work limits it to a single employer. *Stauffer*, 74 A.3d at 407. Evidence that a claimant is engaged in an independent business is an **absolute prerequisite** to a determination of self-employment. *Quality Care Options*, 57 A.3d at 666. As noted by our Supreme Court, "[a] worker can be considered an independent contractor only if he or she is in business for himself or herself." *Danielle Viktor, Ltd. v. Department of Labor and Industry*, 892 A.2d 781, 798 (Pa. 2006).

Therefore, an employer must show that the claimant took positive steps toward establishing an independent business. *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005, 1008 (Pa. Cmwlth. 1990). Further, the independent trade established must involve the same type of services that the claimant provided to the employer, *Electrolux Corporation v. Commonwealth, Department of Labor and Industry, Bureau of Employer Tax Operations*, 705 A.2d 1357 (Pa. Cmwlth. 1998), and the claimant must have performed those services for others, and not just for the employer, *Peidong Jia v. Unemployment Compensation Board of Review*, 55 A.3d 545, 548 (Pa. Cmwlth. 2012). We have stressed the importance of an employer to submit evidence to show that claimant is engaged in an independent business. *See id.* at 549 (holding that without evidence that the claimant established an independent business or performed the same services for others, the employer could not establish the second prong of the test to overcome the statutory presumption of employment); *see also Clark*, 129 A.3d at 1277 (concluding that the employer failed to satisfy the second prong where there was no evidence that the

claimant established a private enterprise or independent business through which he provided services to others).

**Board's Findings of Fact**

Unfortunately, the Board's decision did not address all of the factual issues that are essential to a determination of whether Putative Employer satisfied the independent contractor test of section 4(l)(2)(B) of the Law. Notably, the Board did not make a finding as to who paid Claimant's commissions, which is an essential factor to consider in determining whether Claimant was an independent contractor or an employee. The Board found only that Claimant was paid commissions "while performing services for Farinhas Logistics," (Board's Findings of Fact Nos. 17-20), that the rate of commission was non-negotiable and established by Putative Employer, that no taxes were withheld from Claimant's wages, and that Claimant received a 1099 for tax purposes (Board's Findings of Fact Nos. 11-13).

However, the commission statements in the record reflect that while commissions were earned from Putative Employer, payment of those commissions appear to have been made to Claimant by Huber out of his personal bank account and/or newly established business ("Keep On Trucking, LLC"), and Claimant's 1099s appear to have been issued by Huber and/or his business. Indeed, Huber's testimony at the remand hearing before the referee raises a serious question as to who, or what entity, paid the commissions and actually employed Claimant. The Board must address this evidence/testimony in the record and make further findings regarding the same. Further, although the Board found that training was provided by Putative Employer, the record indicates that Huber provided training to Claimant, and

18

the Board failed to explain the legal and/or factual basis for its determination that Claimant received training from Putative Employer.

Although the record contains evidence that would support additional, necessary findings, it is for the Board, and not this Court, to provide findings of fact sufficiently specific to reveal the true nature of Claimant's relationship with Putative Employer. *Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 961 A.2d 261, 265 (Pa. Cmwlth. 2008). In the absence of specific findings of fact necessary for the examination of the independent contractor test set forth in section 4(l)(2)(B) of the Law, the case must be remanded to the Board. *D.K. Abbey Marketing, Inc. v. Unemployment Compensation Board of Review*, 645 A.2d 339, 342 (Pa. Cmwlth. 1994). We note that a remand is consistent with our prior case law. *Osborne Associates, Inc. v. Unemployment Compensation Board of Review*, 3 A.3d 722, 733 (Pa. Cmwlth. 2010) (remanding to the Board to make the necessary findings to determine the claimant's eligibility for benefits based on the independent contractor test factors); *Resource Staffing, Inc.*, 961 A.2d at 265 (vacating the Board's order and remanding the matter for additional findings where the decision adopted by the Board did not make adequate findings necessary for applying the independent contractor test factors); *Tri-State Scientific v. Unemployment Compensation Board of Review*, 589 A.2d 305, 308 (Pa. Cmwlth. 1991) (holding that appellate review could not be exercised where the Board failed to make essential findings on the elements set forth in section 4(l)(2)(B) of the Law and, thus, the case was required to be remanded to the Board to make specific findings of fact of the issue of Claimant's employment status).

Additionally, the Board failed to make any credibility determinations as to the testimony of Claimant, Huber, and Putative Employer. It is well-established

19

that it is the Board's duty and functional purpose to assign credibility and weight determinations to the evidence presented, *Wardlow v. Unemployment Compensation Board of Review,* 387 A.2d 1356, 1357 (Pa. Cmwlth. 1978), without which this Court cannot perform meaningful appellate review.  As we have previously stated:

> When . . . the burdened party did present *sufficient* evidence as a matter of law and yet failed to prevail below, we then must determine whether the reason for the adverse determination stems from the factfinder's opinion that the evidence presented was not credible, or, whether instead the factfinder committed an error of law in applying the proper principle of law to the facts presented.  If the latter, we can reverse the agency, even if the factfinder has found the testimony of the burdened party credible, because in such instance the issue is a matter of law for this Court to determine.  In the former instance, however, the approach is different because our scope of review precludes us from making factual findings or credibility determinations.  Moreover, we decline to infer credibility.  Thus, we must scrutinize the adjudication.  If specific credibility determinations appear that support the result of the adjudication, then we may affirm the decision below on the basis that the burdened party failed in his burden to *persuade* the factfinder.  If, however, *specific* credibility determinations do not appear in the factual findings, in the discussion or conclusions, and no other *specific* explanation for the adverse determination appears in the adjudication, then we have no other alternative but to vacate the order below and remand for specific credibility findings and for an explanation of the agency's decision; otherwise we could not perform our appellate review function.

*Kirkwood v. Unemployment Compensation Board of Review,* 525 A.2d 841, 844 (Pa. Cmwlth. 1987) (alterations in original).

20

## Conclusion

The Board failed to make essential findings of fact on the elements set forth in section 4(l)(2)(B) of the Law and make credibility determinations to enable this Court to perform its function of appellate review. Therefore, the matter must be remanded to the Board to make essential findings and to issue a new decision containing express credibility determinations and sufficient explanation its decision.

Accordingly, the Board's order is vacated and the matter is remanded to the Board, consistent with this memorandum opinion.

_____
PATRICIA A. McCULLOUGH, Judge

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Farinhas Logistics, LLC,          :
                    Petitioner    :
                                  :   No. 1694 C.D. 2015
          v.                      :
                                  :
Unemployment Compensation Board   :
of Review,                        :
                    Respondent    :

## *ORDER*

AND NOW, this 5th day of December, 2016, the August 13, 2015 order of the Unemployment Compensation Board of Review (Board) is vacated and the case is remanded to the Board to make additional findings and issue a new decision consistent with this memorandum opinion.

The application of Farinhas Logistics, LLC, to strike the brief submitted by Eliseos A. Anenoglou is granted and the brief is hereby stricken.

Jurisdiction relinquished.


_____
PATRICIA A. McCULLOUGH, Judge