Cathy STAUFFER, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 2013.

Decided Aug. 19, 2013.

Solomon Z. Krevsky, Lemoyne, for petitioner.

Teresa Heacock DeLeo, Assistant Counsel, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Cathy Stauffer (Petitioner), an individual who does not operate a business, petitions for review of a decision and order of the Unemployment Compensation Board of Review (Board) holding that she was an employer of Dana C. Cramer (Claimant), whom she paid to provide child care when she was at work, and that Claimant was therefore not ineligible for unemployment compensation benefits under Section 402(h) of the Unemployment Compensation Law (the Law).[1] The only issue before us is whether Petitioner was an employer, as the Board also ruled that Claimant is ineligible for benefits under

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, § 402(h), *as amended*, 43 P.S. § 802(h). Section 402(h) of the Law provides that "[a]n employe shall be ineligible for compensation for any week ... [i]n which he is engaged in self-employment." 43 P.S. § 802(h).

Section 402(b) of the Law because she voluntarily quit work without a necessitous and compelling reason and Claimant has not appealed that ineligibility ruling.[2] For the reasons that follow, we reverse the Board's ruling that Petitioner was Claimant's employer.

Petitioner is a mother of three children who works for employers outside the home. (Record Item (R. Item) 16, Board Decision and Order, Findings of Fact (Board F.F.) ¶ 2, Reproduced Record (R.R.) at 86; R. Item 9, Transcript of Testimony from Referee's August 23, 2012 Hearing (8/23/12 H.T.) at 6, 12, R.R. at 30, 36.) Two of Petitioner's children have special needs. (R. Item 16, Board F.F. ¶ 2, R.R. at 86; R. Item 9, 8/23/12 H.T. at 6, R.R. at 30.) Claimant, age 21, had previously worked babysitting Petitioner's children for ten years on a casual basis. (R. Item 16, Board F.F. ¶ 3, R.R. at 86; R. Item 9, 8/23/12 H.T. at 13, R.R. at 37.) In 2010, Petitioner and Claimant agreed that Claimant would provide more of the babysitting that Petitioner needed. (R. Item 16, Board F.F. ¶ 5, R.R. at 86; R. Item 9, 8/23/12 H.T. at 5–6, 11, R.R. at 29–30.) Claimant, however, was not the only person providing child care to Petitioner, and five or six other babysitters, including Claimant's mother, also watched Petitioner's children. (R. Item 9, 8/23/12 H.T. at 7, 11, 14, R.R. at 31, 35, 38.) Petitioner and Claimant did not enter into any written agreement governing Claimant's work. (*Id.* at 7, 14, R.R. at 31, 38.)

Petitioner paid Claimant $10 per hour for child care or a flat $75 fee for overnight work. (R. Item 16, Board F.F. ¶ 1, R.R. at 86; R. Item 9, 8/23/12 H.T. at 5, 7, 10, R.R. at 29, 31, 34.) Claimant gave Petitioner handwritten invoices for the hours she worked. (R. Item 9, 8/23/12 H.T. at 7–8, 10, 14, R.R. at 31–32, 34, 38.) The documents submitted by Claimant in support of her claim for benefits show that in 2011, the base year at issue in this case, Petitioner paid Claimant a total of $10,345 and that these payments were made throughout the year in variable amounts, with more than half of the payments in amounts of $220 or less per week. (R. Item 2, Claimant Financial Information, R.R. at 5–6, 9.) Claimant reported this income on her federal and state taxes as profit from operation of a child care business and deducted over $2,000 for her car and telephone as expenses of that business. (*Id.,* R.R. at 9–10, 16.) Claimant also had some part-time employment in 2011 for at least part of the year in addition to her child care for Petitioner, and she reported that other income as wages from employment. (*Id.,* R.R. at 3, 7, 13, 15; R. Item 9, 8/23/12 H.T. at 11, R.R. at 35.) Petitioner did not withhold income taxes from her payments to Claimant or provide a W–2 Form or a Form 1099 to Claimant, but reported the payments and identified her child care providers on her own tax forms. (R. Item 9, 8/23/12 H.T. at 6, 11, 13–15, 17–18, R.R. at 30, 35, 37–39, 41–42.)

In April 2012, Claimant decided to stop providing child care for Petitioner to accept a job with a printing and finishing company that she knew was subject to frequent layoffs for insufficient work. (R. Item 9, 8/23/12 H.T. at 9, 19, R.R. at 33,

**2.** The Board's ruling that Claimant is ineligible for benefits does not moot this appeal or negate Petitioner's status as an aggrieved party because the determination that Petitioner was an employer has a direct adverse effect on Petitioner of subjecting her to potential unemployment compensation tax liability.

*See Applied Measurement Professionals, Inc. v. Unemployment Compensation Board of Review,* 844 A.2d 632, 634 n. 3 (Pa.Cmwlth. 2004) (*en banc* ); *Venango Newspapers v. Unemployment Compensation Board of Review,* 158 Pa.Cmwlth. 379, 631 A.2d 1384, 1386 (1993).

43; R. Item 15, Transcript of Testimony from Referee's November 7, 2012 Hearing (11/7/12 H.T.) at 3–4, R.R. at 81–82.) On May 31, 2012, Claimant filed for unemployment benefits. On July 13, 2012, the Unemployment Compensation Service Center found that Claimant was not an independent contractor with respect to the child care that she provided for Petitioner and that Claimant was therefore not ineligible under Section 402(h) of the Law. (R. Item 5, Notice of Determination.) The Service Center on the same date issued a separate determination that Claimant was not ineligible under Section 402(b) of the Law for having voluntarily quit her work for Petitioner. (Supplemental Record Item (Supp. R. Item) 4, Notice of Determination in B–12–09–F–7632.) Petitioner timely appealed from both of these determinations.

On August 23, 2012, the Referee held a hearing on both the issue of whether Claimant was self-employed and the voluntary quit issue at which Petitioner, Claimant and Claimant's mother testified. Petitioner testified that when Claimant's child care for her "first started, it was more random. If I needed to run an errand, Dana [Claimant] would stay with the children and I would pay her for that. And then I think later in 2010 she was asking for more hours.... [S]he was watching the children while I was working sometimes, and then she was asking for more hours." (R. Item 9, 8/23/12 H.T. at 6, R.R. at 30.) Petitioner testified that Claimant chose which hours she worked from the hours that Petitioner needed child care and that Claimant was free both to reject assignments and to babysit for other families:

> [Petitioner's Representative]: Who determined what hours Dana Cramer [Claimant] would offer services?
>
> [Petitioner]: I made a list of hours I needed every week, and then Dana got

to choose what hours she chose to work for those, what suited her to work that week.

> [Petitioner's Representative]: Was Dana the only person providing childcare for you?
>
> [Petitioner]: No.
>
> [Petitioner's Representative]: So on the hours that Dana didn't select, how would you go about distributing that?
>
> [Petitioner]: I would offer them to the other babysitters who watched my children.
>
>        \*      \*      \*
>
> [Petitioner's Representative]: Okay. Did you ever restrict her from babysitting for anyone else?
>
> [Petitioner]: No.
>
>        \*      \*      \*
>
> [Petitioner's Representative]: Was she able to adjust her schedule according to her needs?
>
> [Petitioner]: Yes.
>
> [Petitioner's Representative]: And did that subject her to discipline?
>
> [Petitioner]: No.
>
>        \*      \*      \*
>
> [Petitioner's Representative]: Could she require more or less hours?
>
> [Petitioner]: Yes.
>
> [Petitioner's Representative]: Did that ever happen?
>
> [Petitioner]: Yes.
>
> [Petitioner's Representative]: Can you explain that a little better?
>
> [Petitioner]: Well like I said, there were other babysitters that would come about, and Dana asked if she would have first pick of all the hours.... And then

she would decide how many hours she wanted to take.

(*Id.* at 7–9, R.R. at 31–33.)

Claimant testified that "I've been watching Cathy's [Petitioner's] kids for 10 years now ... off and on," and that from 2010 on, she babysat Petitioner's children approximately 30 to 35 hours per week. (R. Item 9, 8/23/12 H.T. at 5, 11, 13, R.R. at 29, 35, 37.) Claimant testified:

> I was working another job when I started babysitting for Cathy, and I wasn't getting much hours there, so she had said that she was looking for someone to watch the kids more and I offered to do that for her. She had 30 to 35 hours a week that I would come to her house and watch her kids for the set $10 an hour that she had told me. While I was babysitting for her, she had at least five or six other employees working for her, babysitters. . . .

> \* \* \*

> [Petitioner's Representative]: Did you ever ask for more hours?

> [Claimant]: If she had them.

(*Id.* at 11, 13, R.R. at 35, 37.) Claimant admitted that she was free to babysit for other families, although she was not babysitting for anyone else in the 2010–2012 period. Claimant testified:

> [Petitioner's Representative]: Were you free to babysit during your off hours for other people?

> [Claimant]: No. I didn't have anyone else to babysit for.

> [Petitioner's Representative]: But if you did, were you free to do that?

> [Claimant]: I could.

> [Petitioner's Representative]: Okay.

> [Claimant]: I had a choice.

(*Id.* at 13–14, R.R. at 37–38.) Claimant also admitted that she had babysat for others "[h]ere and there" in the past. (*Id.*

at 12, R.R. at 36.) Claimant did not dispute Petitioner's testimony that Petitioner offered her hours that she could accept or reject and that she was not directed that she had to work particular hours. The only testimony Claimant gave that she ever felt a compulsion to work particular hours was that "most of the reasons of why I do stuff for you last minute is because I was usually begged to do it and I felt like I had to do it." (*Id.* at 18–19, R.R. at 42–43.)

Claimant's mother, who appeared as a witness for Claimant, confirmed that Claimant was not Petitioner's only child care provider. Claimant's mother testified that she also babysat for Petitioner during the 2010–2012 time period. (R. Item 9, 8/23/12 H.T. at 14, R.R. at 38.) Claimant's mother testified that Petitioner always left a paper on the counter with instructions as to what the children were to eat and where and when they were to be taken if they had an activity to go to or needed to be dropped off at Petitioner's husband's home. (*Id.* at 14–15, R.R. at 38–39.) Claimant's mother, however, admitted that these lists did not direct the person watching the children to provide instruction to the children or do particular activities with the children. (*Id.* at 15, R.R. at 39.)

On August 24, 2012, the Referee issued a decision and order affirming the Service Center's determination that Claimant was an employee of Petitioner and was not ineligible for benefits under Section 402(h). The Referee found that "[t]he claimant was free to turn down assignments" and that Petitioner "did not direct the claimant as to the specifics of the babysitting details," but concluded that Claimant was an employee rather than an independent contractor because of the "large number of hours she worked for [Petitioner] each week" and because Petitioner gave Claimant "certain instructions with regard to

how to care for her children." (R. Item 11, Referee Decision and Order at 2 & Findings of Fact ¶¶ 4, 5, R.R. at 47–48.) On the same date, the Referee issued a separate decision and order affirming the Service Center's determination that Claimant was not ineligible under Section 402(b) of the Law. (Supp. R. Item 9, Referee Decision and Order in B–12–09–F–7632.)

Petitioner timely appealed both of the Referee's decisions to the Board. On October 16, 2012, the Board issued orders remanding the case to the Referee to hold a further hearing as the Board's Hearing Officer to address whether Petitioner "participates in a waiver program with the state involving the receipt of monies for her to pay for the child care for her disabled children," and obtain "any documentation regarding the receipt of monies from the state for child care for her disabled children." (R. Item 13, Board Remand Order & Memorandum of Issues, R.R. at 74–75.) At the remand hearing, Petitioner testified that she was not reimbursed by the state for any of her child care expenses and received no child care assistance from the state during the period when Claimant watched her children. (R. Item 15, 11/7/12 H.T. at 2, R.R. at 80.) Petitioner testified that since July 2012, the state has paid child care providers to provide her some respite care because of her children's disabilities, but that the state program does not pay for child care while she works outside the home. (*Id.* at 2–3, R.R. at 80–81.) No other testimony was taken or evidence received at the remand hearing on the issue of whether Petitioner was Claimant's employer.

On January 17, 2013, the Board issued orders in both of Petitioner's appeals. In its order on the voluntary quit issue, the Board reversed the Referee's decision and held that Claimant was ineligible for bene-

fits under Section 402(b) of the Law because she had failed to show a necessitous and compelling cause for leaving her work for Petitioner. (Supp. R. Item 14, Board Decision and Order in B–12–09–F–7632.) No appeal was taken from that order.

In its order at issue here, the Board affirmed the Referee's decision that Claimant was not ineligible for benefits under Section 402(h). The Board made its own findings of fact, including the following:

5. The employer and the claimant agreed that the claimant would provide the bulk of the babysitting services employer needed and the employer would not have 5–6 people providing these services.

6. The employer directed the claimant on the schedule and needs of her children.

(R. Item 16, Board Decision and Order, R.R. at 86–87.) The Board, however, made no findings on most aspects of Claimant's work for Petitioner, including whether Claimant was free to accept or reject assignments, whether Claimant could babysit for others, whether Claimant was required to watch the children at a particular location, and how Claimant treated her work for tax purposes. The Board also made no credibility findings with respect to any witness's testimony, nor did it discuss any of the Referee's findings of fact or conclusions. The Board held that Claimant was Petitioner's employee based on only two factors, its conclusion that Petitioner's instructions as to her children's schedule and needs constituted direction and control over the child care and its characterization of Claimant's work as "full time." (*Id.*, R.R. at 87.)

On appeal,[3] Petitioner argues both that the Board's findings of fact are not sup-

---

3. Our scope of review is limited to determin- ing whether necessary findings of fact are

ported by substantial evidence and that the Board erred as a matter of law in its determination that Claimant was Petitioner's employee. We agree that the Board's finding that Petitioner "would not have 5–6 people providing these services" and its characterization of Claimant's work as "full time" (R. Item 16, Board F.F. ¶ 5 and Decision and Order at 2, R.R. at 86–87) are not supported by substantial evidence and that the Board erred in holding that Claimant was Petitioner's employee and not an independent contractor.[4]

■ Under Sections 401(a) and 402(h) of the Law, a claimant must have wages from employment and cannot be eligible for benefits based on self-employment. 43 P.S. §§ 801(a), 802(h). Whether a claimant is an employee or a self-employed independent contractor is a question of law subject to this Court's plenary review. *Quality Care Options v. Unemployment Compensation Board of Review*, 57 A.3d 655, 660 (Pa.Cmwlth.2012); *Beacon Flag Car Co. v. Unemployment Compensation Board of Review*, 910 A.2d 103, 107 n. 9 (Pa.Cmwlth.2006).

■ Section 4($l$)(2)(B) of the Law sets forth a two-pronged test for whether work constitutes employment or is instead an independent contractor, self-employment relationship ineligible for benefits. *Jia v. Unemployment Compensation Board of Review*, 55 A.3d 545, 548 (Pa.Cmwlth. 2012); *Stage Road Poultry Catchers v.*

*Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 34 A.3d 876, 888 (Pa.Cmwlth.2011). Section 4($l$)(2)(B) provides, in relevant part:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753($l$)(2)(B). There is therefore a presumption that one who performs services for wages is an employee and not an independent contractor, but this presumption is overcome and the claimant is not an employee if the person for whom she worked shows (1) that the claimant was free from control and direction in performing the services and (2) that the services are of a type customarily performed in an independent trade or business. *Stage Road Poultry Catchers*, 34 A.3d at 888–89; *CE Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1167 (Pa.Cmwlth.2008).

■ The first prong, whether claimant was free from control and direction, is

---

supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. 2 Pa.C.S. § 704; *Quality Care Options v. Unemployment Compensation Board of Review*, 57 A.3d 655, 659 n. 2 (Pa.Cmwlth.2012).

4. Petitioner also argues that the Board's statement in its Finding of Fact No. 1 that Claimant was "employed as a nanny" is not supported by substantial evidence. Claimant once in her testimony called herself a "nanny," although she also described that work as

watching the children and babysitting. (R. Item 9, 8/23/12 H.T. at 5, 11, 13, R.R. at 29, 35, 37.) This nomenclature, however, is not dispositive of the issues before us. It is the facts concerning the working relationship, not labels unilaterally attached by either party, that determine the legal question of whether Claimant was an employee or independent contractor. *See Harper v. Unemployment Compensation Board of Review*, 65 Pa. Cmwlth. 474, 443 A.2d 419, 421 (1982).

determined from facts concerning the actual working relationship between the claimant and the person for whom she worked. *Quality Care Options*, 57 A.3d at 660. Factors relevant to this issue include: how the claimant was paid; how taxes on the claimant's earnings were paid; whether the claimant or the person for whom she worked supplied tools or equipment necessary to perform the services; whether the person for whom claimant worked provided on-the-job training; whether claimant was required to attend meetings or report on her work; who set the time and location of the work; whether the claimant's work was subject to supervision or review; the terms of any written contract between the parties; the degree to which the claimant was directed with respect to the work; and whether the claimant was free to refuse work assignments without repercussions. *Quality Care Options*, 57 A.3d at 660; *Stage Road Poultry Catchers*, 34 A.3d at 889; *CE Credits OnLine*, 946 A.2d at 1168–69; *Beacon Flag Car Co.*, 910 A.2d at 108.

■ As to the second prong, whether the services are customarily performed in an independent trade or business, three factors are relevant: whether the claimant was also able to perform the same services for others; whether the nature of the business compelled the claimant to perform those services only for a single employer; and whether the claimant worked on job-by-job basis and was free to accept or reject assignments. *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 586 Pa. 196, 222–23, 229–30, 892 A.2d 781, 797–98, 801–02 (2006); *Stage Road Poultry Catchers*, 34 A.3d at 891; *Gill v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 26 A.3d 567, 570 (Pa.Cmwlth.2011). The fact that the work does not require advanced skills

or specialized training does not preclude it from being an established, independent trade or business under Section 4(*l*)(2)(B). *Stage Road Poultry Catchers*, 34 A.3d at 892 n. 11.

The claimant's freedom to accept or reject assignments is an important factor with respect to both prongs of Section 4(*l*)(2)(B)'s test for whether an employer-employee relationship exists. *Danielle Viktor, Ltd.*, 586 Pa. at 222 & n. 15, 892 A.2d at 797 & n. 15; *Stage Road Poultry Catchers*, 34 A.3d at 890–92; *SkyHawke Technologies LLC v. Unemployment Compensation Board of Review*, 27 A.3d 1050, 1056, 1058 (Pa.Cmwlth.2011); *Beacon Flag Car Co.*, 910 A.2d at 108–09. As our Supreme Court held in *Danielle Viktor, Ltd.*, "[i]t is difficult to fathom a situation where someone other than an individual engaged in his or her own business would possess the unmitigated prerogative to accept or reject assignments at will, to work only when he or she chose to." 586 Pa. at 222, 892 A.2d at 797.

■ Here, the undisputed evidence in the record demonstrates that both prongs of Section 4(*l*)(2)(B)'s test were satisfied and that Claimant was not an employee. The testimony of Petitioner, Claimant and Claimant's witness and Claimant's documents all showed that Claimant was paid at an hourly rate or flat fee for the work she did, rather than a salary, that Claimant invoiced Petitioner, and that Claimant reported her income from her services as self-employment profits from a child care business. (R. Item 9, 8/23/12 H.T. at 5, 7–8, 10, 12, 14, R.R. at 29, 31–32, 34, 36, 38; R. Item 2, Claimant Financial Information, R.R. at 9, 16.) Claimant was not required to wear a uniform or attend any meetings and received no training from Petitioner. (R. Item 9, 8/23/12 H.T. at 8, 14, R.R. at 32, 38.) Claimant used her own car and telephone for her work and deducted for

use of that equipment from her taxes as business expenses. (R. Item 2, Claimant Financial Information, R.R. at 9–10, 16; R. Item 9, 8/23/12 H.T. at 8, R.R. at 32.) While Claimant often watched the children at Petitioner's house, Claimant was not required to work at a particular location and could and sometimes did babysit the Petitioner's children at her own house. (R. Item 9, 8/23/12 H.T. at 8, 13, R.R. at 32, 37.) Petitioner gave Claimant instructions "on the schedule and needs of her children" (R. Item 16, Board F.F. ¶ 6, R.R. at 86; R. Item 9, 8/23/12 H.T. at 11, 14–15, R.R. at 35, 38–39), but did not direct her to do particular activities with them. (R. Item 9, 8/23/12 H.T. at 8, 14–15, R.R. at 32, 38–39.)

· Claimant was also one of at least six babysitters that. Petitioner was paying to watch her children, and the amount of hours that Claimant worked varied significantly from week to week. (R. Item 9, 8/23/12 H.T. at 7, 11, 14, R.R. at 31, 35, 38; R. Item 2, Claimant Financial Information, R.R. at 5–6.) While the Board found that after Claimant increased her hours, Petitioner "would not have 5–6 people providing these services" and described Claimant's work as "full time" in the Discussion portion of its decision (R. Item 16, Board F.F. ¶ 5 and Decision and Order at 2, R.R. at 86–87), the Board's findings are conclusive on appeal only where they are supported by substantial evidence in the record as a whole. *Stage Road Poultry Catchers*, 34 A.3d at 886; *Philadelphia Gas Works v. Unemployment Compensation Board of Review*, 654 A.2d 153, 157 (Pa.Cmwlth.1995). Neither of these determinations is supported by substantial evidence.

■ Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. *Stage Road Poultry Catchers*, 34 A.3d at 886; *Resource Staff-*

*ing, Inc. v. Unemployment Compensation Board of Review*, 995 A.2d 887, 891–92 & n. 11 (Pa.Cmwlth.2010) (reversing Board findings that putative employer controlled claimant's work and that claimant could not work for others where those findings were not supported by the record as a whole, including claimant's testimony). There is *no* evidence in the record to support the Board's finding that Petitioner stopped using other babysitters. Indeed, this finding is contradicted by all of the evidence in the record—all of the witnesses, including Claimant, testified that Petitioner had other babysitters in the 2010–2012 period, and Claimant herself testified that after she increased her hours, Petitioner "had at least five or six other employees working for her, babysitters." (R. Item 9, 8/23/12 H.T. at 7, 11, 14, R.R. at 31, 35, 38.)

■ Claimant did state in her testimony that she worked 30–35 hours per week for Petitioner. (*Id.* at 5, 11, R.R. at 29, 35.) That oral estimate, however, cannot constitute substantial evidence that Claimant regularly worked that amount or a full-time schedule because it is directly contradicted by the documentation that Claimant herself submitted to show her eligibility for benefits. Claimant's financial submissions reported payments that varied widely from week to week, most of which are in amounts much lower than 30 hours per week. (R. Item 2, Claimant Financial Information, R.R. at 5–6.) "Although the Board is the ultimate factfinder, the Board cannot ignore overwhelming evidence in favor of a contrary result which is not supported by the evidence." *Philadelphia Gas Works*, 654 A.2d at 157. Conclusory testimony that is contradicted by the witness's own documents or other unrefuted documentation, without any explanation of the contradiction or reconciliation with the undisputed documentary evidence, does

not constitute substantial evidence on which a *reasonable* mind would base a conclusion. *Bonatesta v. Northern Cambria School District*, 48 A.3d 552, 558–60 (Pa.Cmwlth.2012) (conclusory testimony that teacher was intoxicated did not constitute substantial evidence to support misconduct finding where it was contradicted by witness's prior testimony and notes and breathalyzer test and no explanation of the contradiction was provided); *Philadelphia Gas Works*, 654 A.2d at 157–59 (finding that claimant did not violate drug policy was not supported by substantial evidence where his denial of drug use was contradicted by drug test records that were not discredited by the Board).

The record is also clear that Claimant was free to provide child care to others and that the nature of those services did not require that she look to a single employer to provide those services. Claimant testified that she could babysit for other families in the hours that she was not watching Petitioner's children and that she had babysat for others in the past. (R. Item 9, 8/23/12 H.T. at 12–14, R.R. at 36–38.) The fact that Claimant did not happen to do any babysitting for others during the period in question is immaterial. The issues in determining whether the type of work constitutes an independent trade or business are whether the claimant was restricted from performing the services for others and whether anything in the nature of the work limits it to a single employer, not whether the claimant chooses to work for third parties. *Stage Road Poultry Catchers*, 34 A.3d at 891–92; *Schneider v. Unemployment Compensation Board of Review*, 12 A.3d 754, 757–58 (Pa.Cmwlth.

2010). The fact that the bulk of Claimant's income came from her work for Petitioner likewise does not make her an employee. *Schneider*, 12 A.3d at 757–58.

Finally, and significantly, the record established that Claimant could decide whether to accept assignments and was thus free to set her own work hours. Petitioner testified that Claimant could choose which babysitting times she wished to work and was free to turn down assignments. (R. Item 9, 8/23/12 H.T. at 7–9, R.R. at 31–33.) The Board did not discredit any of Petitioner's testimony on this issue or express any disagreement with the Referee's findings that Claimant was free to reject assignments.[5] Moreover, the testimony that Claimant was not required to accept assignments was undisputed. The only testimony from Claimant that she felt that she had to accept any assignments was that she agreed to some because Petitioner "begged" her to do it. (R. Item 9, 8/23/12 H.T. at 18–19, R.R. at 42–43.) Begging a person to provide services is not consistent with the right to control and direct that defines an employment relationship.

■ The Board argues that the relationship was an employer-employee relationship because it found that Petitioner "directed the claimant on the schedule and needs of her children" and reasoned therefore that Petitioner "as the mother of her children controlled how the claimant performed her duties and directed her actions on a daily basis." (R. Item 16, Board F.F. ¶ 6 and Decision and Order at 2, R.R. at 86–87.) The Board, however, confuses direction as to what work is to be done with

---

**5.** Where the Board makes no finding on a significant factor that must be considered in determining whether a worker was an independent contractor or employee, this Court may properly consider uncontradicted testimony of the putative employer that was not discredited by the Board in determining whether the putative employer has satisfied its burden under Section 4(*l*)(2)(B). *See Stage Road Poultry Catchers*, 34 A.3d at 890–92; *SkyHawke Technologies LLC*, 27 A.3d at 1056–1057.

control over the manner of performance. The mere fact that direction is given with regard to the work to be done does not make the claimant's services subject to "control or direction" under Section 4(*l*)(2)(B) of the Law. *Stage Road Poultry Catchers,* 34 A.3d at 889–90; *CE Credits OnLine,* 946 A.2d at 1169. "Every job, whether performed by an employee or by an independent contractor, has parameters and expectations." *CE Credits OnLine,* 946 A.2d at 1169. The "control or direction" that makes the work an employer-employee relationship is control or direction over the time, place and manner of performance and the means of accomplishing the work. *Stage Road Poultry Catchers,* 34 A.3d at 889–90; *CE Credits On-Line,* 946 A.2d at 1169; *Beacon Flag Car Co.,* 910 A.2d at 108. The direction and control shown and found by the Board here, direction as to the children's schedule and as to their medications and other needs, was direction with respect to what work needed to be done, not how Claimant was to do that work. In contrast, Claimant was not directed or controlled in how she did that work—Claimant was not required to watch the children at a particular location, she was not directed to provide instruction or do specific activities with them, and because she could accept or reject assignments, she determined when she would work.

The cases relied on by the Board, *Jia* and *Glatfelter Barber Shop v. Unemployment Compensation Board of Review,* 957 A.2d 786 (Pa.Cmwlth.2008), do not support the Board's conclusion that Claimant was Petitioner's employee. In *Jia,* this Court reversed a Board decision that the claimant was an independent contractor because the record showed that the claimant was required to report to the employer's office, had an eight-hour work day schedule prescribed by the employer and needed to obtain the employer's permission for any deviation from the time or place of work

set by the employer, and this fixed schedule effectively precluded freedom to work for others. 55 A.3d at 547–49 & n. 4. In *Glatfelter Barber Shop,* the barbershop held to be the claimant's employer set the work hours, required attendance at meetings and notice of vacations, required that the claimant execute an agreement with a non-compete clause, and was required by statute to have a manager on the premises to supervise the claimant's work. 957 A.2d at 789–91. Here, in contrast, the record showed that Petitioner did not control the time, place or manner of Claimant's work and that Claimant was free to provide child care for others.

For the foregoing reasons, we conclude that Petitioner sustained her burden of proof under both prongs of Section 4(*l*)(2)(B) and that the Board erred in holding that she was Claimant's employer. Accordingly, the order of the Board is reversed.

### *ORDER*

AND NOW, this 19th day of August, 2013, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby REVERSED.