IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A Special Touch,                         :
                    Petitioner           :
                                         :
            v.                           :    No. 1181 C.D. 2016
                                         :    Submitted: February 17, 2017
Department of Labor and Industry,        :
Office of Unemployment                   :
Compensation Tax Services,               :
                    Respondent           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT[1]                    FILED: August 23, 2018

        A Special Touch, a beauty salon, petitions for review of an adjudication
of the Department of Labor and Industry (Department) that imposed an
unemployment compensation tax on it for five persons who worked at the salon in a
variety of positions. In its adjudication, the Department classified these five workers
as employees, but it classified five other workers who worked there in similar
positions as independent contractors. Because all ten workers were "customarily
engaged in an independently established trade, occupation, profession or business"
under Section 4(*l*)(2)(B) of the Unemployment Compensation Law (Law),[2] we
reverse the Department's holding in that respect.

                                **Background**

        A Special Touch (Salon) is a sole proprietorship owned by Colleen
Dorsey (Owner) that offers nail, skin, massage and cosmetic services. On August

---

[1] This matter was assigned to the authoring judge on March 12, 2018.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §753(*l*)(2)(B).

26, 2014, the Department's Office of Unemployment Compensation Tax Services (Tax Services Office) notified Salon that it owed $10,647.93 in unemployment compensation taxes, with interest, for the period 2010 through the second quarter of 2014.[3] The assessment notice asserted that ten persons who worked at Salon during that period of time were employees and subject to the unemployment payroll tax. Salon petitioned for a reassessment, on which the Department conducted a hearing on January 12, 2015.

In the course of the reassessment proceeding, the Tax Services Office conceded that three of the workers had been incorrectly classified as employees. The three included one licensed cosmetologist and two others who did occasional cleaning and babysitting services. This left the status of the seven remaining workers in contest. Two worked as massage therapists; two worked as nail technicians; one did cleaning and maintenance work; one did babysitting, cleaning and laundry work; and one did babysitting and cleaning work. In its adjudication, the Department

---

[3] Section 304(a)(1)-(2) of the Law provides, in pertinent part:

> Each employer shall file with the department such reports, at such times, and containing such information, as the department shall require, for the purpose of ascertaining and paying the contributions required by this act.
>
> > (a)(1) If any employer fails within the time prescribed by the department to file any report necessary to enable the department to determine the amount of any contribution owing by such employer, the department may make an assessment of contributions against such employer of such amount of contributions for which the department believes such employer to be liable, together with interest thereon as provided in this act.
> >
> > (2) Within fifteen days after making such assessment the department shall give notice thereof to such employer as provided in paragraph (3). If such employer is dissatisfied with the assessment so made he may petition the department for a re-assessment in the manner herein prescribed.

43 P.S. §784(a)(1)-(2).

2

concluded that the massage therapists were independent contractors and, accordingly, granted Salon's reassessment as to them. With respect to the five remaining workers, the Department acknowledged it was a "close case." Department Adjudication at 33; Reproduced Record at 36a (R.R. ___). In the end, it concluded that the two nail technicians and the three who did occasional babysitting, cleaning and laundry work at the Salon were employees, not independent contractors.

In reaching its conclusion, the Department made extensive findings of fact, and they are not disputed by Salon. In 1999, Owner bought the building with an operating salon on the first floor. She lives upstairs. Before Owner bought the operating salon business, it employed 10 to 15 persons, who were treated as employees for purposes of the unemployment payroll tax. Owner continued this business model until approximately 2005, when she closed down Salon. In approximately 2007, Owner reopened Salon under a "lease the space out" arrangement, by which the professional workers split their client payments with Salon. Sixty percent went to the professional worker, and forty percent went to Salon "to cover items such as electric, water, credit card fees and other overhead[.]" Department Adjudication at 3-4, Finding of Fact No. 10; R.R. 7a. Salon did not have written independent contractor agreements with any of the ten individuals whose work at Salon prompted the Department's audit.

None of the ten workers who were the subject of the audit had their names listed on the exterior of the salon. Only one worker, one of the massage therapists, had business cards. All were responsible for maintaining professional licenses, where applicable, and Salon did not provide any job training. All ten

3

workers were free to work for others; had keys to the salon; and maintained their own schedules.

Clients scheduled their appointments for professional services at Salon by directly calling the service providers, who had given their personal phone numbers to their clients, or by calling Salon. All appointments were maintained on Salon's computer, regardless of how they were scheduled. Approximately 80% of Salon's clients had "arrange[d] standing or regular appointments[.]" Department Adjudication at 5, Finding of Fact No. 19; R.R. 8a. The prices for Salon services were agreed upon by both Salon and the professional workers. Salon collected the client's payments, but the professional workers maintained a record of each transaction to ensure an accurate split. Salon paid the professional workers "by business check weekly, biweekly, or semimonthly[,]" without any withholdings for income or other payroll taxes. Department Adjudication at 5, Finding of Fact No. 23; R.R. 8a. Clients paid tips directly to the professional worker except where the client used a credit card to pay for the service and the tip. The professional workers provided their own supplies and equipment.

Prior to the period covered by the assessment, Owner "let one person go" because she "did not feel that person was 'a fit for this,' and did not think 'this is the space' for that person." Department Adjudication at 6, Finding of Fact No. 25; R.R. 9a. Owner indicated to the Tax Services Office that she controlled who provided their services at Salon and could dismiss persons by ending their so-called lease arrangement.

4

The two nail technicians, S.M. and V.D.,[4] have their own stations at Salon. Both appear on Salon's website as members of "Our Team" and "Our trained and friendly staff[.]" Department Adjudication at 12, Finding of Fact Nos. 76, 79; R.R. 15a.

One nail technician, S.M., is Owner's sister and had worked at Salon as an employee before it closed. When it reopened, S.M. agreed to work under the new lease arrangement. S.M. works on Wednesdays, when she may see two to four clients, and sometimes on Tuesdays; she averages $200 per week in earnings. She described her work at Salon as "a side activity – something she does [ ] to get out of the house[.]" Department Adjudication at 12, Finding of Fact No. 74; R.R. 15a. She provides her own equipment and collects her 60% share on a semi-monthly basis.

The other nail technician, V.D., began working at the Salon in 2011 while also working at two other locations. Over time, she brought all her clients to Salon, which is now the only place where she performs her services. She sets her own hours and provides her own equipment.

The three "cleaning personnel" are G.S., C.S. and B.G. Their names do not appear on Salon's website. G.S. works at an M&M factory and began doing part-time janitorial work at Salon in 2013 for a couple hours a week. He sets his own hours and hourly wage, and he bills Salon for his work. C.S. is a college student and works at Red Robin; he does babysitting for Owner's children as well as cleaning and laundry duties for Salon. He works one to four days a week. He sets his hours and hourly wage, and he bills Salon for his work. B.G. worked at Salon during the third quarter of 2012 during which time she also worked at a "temp

---

[4] In its decision dated June 16, 2016, the Department identified the individual workers at issue by their initials. R.R. 45a. The same method is used in this opinion.

5

agency[.]" Department Adjudication at 10, Finding of Fact No. 57; R.R. 13a. She babysat Owner's children and did janitorial work. B.G. set her own hours and hourly wage, working one or two days a week, depending on need, and billed Salon for her work.

The Department reviewed Salon's reassessment petition under Section 4(*l*)(2)(B) of the Law, which indirectly defines self-employed persons as those who are (1) free from control or direction over the performance of their services and are (2) customarily engaged in an independently established trade or business. 43 P.S. §753(*l*)(2)(B).[5] The Department found that all seven workers worked free from Salon's control or direction, which satisfied the first prong. However, the Department concluded that under the second prong, two workers were independent contractors and five were employees of Salon.

With respect to the massage therapists, L.M. and C.B., the Department concluded that they were independent contractors because they provided services in other places, *i.e.*, in their clients' homes. Further, L.M. had her own business cards. Because the massage therapists worked in more than one location, the Department concluded that they were engaged in an independent trade or business.

With respect to the nail technicians and cleaning personnel, the Department found otherwise. Because none provided nail or cleaning-type services at other places, they were found not to be engaged in an independent trade. The Department also reasoned that a person is not "customarily" engaged in a trade or business when he performs "isolated or sporadic jobs." Department Adjudication at

---

[5] The full text of Section 4(*l*)(2)(B) appears in the opinion, *infra*. In actuality, Section 4(*l*)(2)(B) defines the meaning of "employment" under the Law and provides exceptions. It is these exceptions that indirectly define "self-employment," a term that does not appear in Section 4(*l*)(2)(B) of the Law.

6

17 (citing *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593 (Pa. Cmwlth. 2012)); R.R. 20a.[6]

Accordingly, the Department granted Salon's reassessment petition with respect to the two massage therapists, but it denied the petition with respect to the nail technicians and cleaning personnel. Salon then petitioned for this Court's review.

## Appeal

On appeal,[7] Salon argues that the Department erred in concluding that any of the five workers were its employees simply because they did not perform their services in locations other than Salon. Salon asserts that the Department erred in its reliance upon *Minelli*, 39 A.3d 593, because that case concerned whether a claimant, who is receiving unemployment benefits, becomes ineligible by doing occasional, short-term jobs. *Minelli* has application only in that circumstance. Salon argues that the true test of self-employment is whether the worker is *able* to work for others, not whether he actually does so.

We begin with a review of the law. A putative employer challenging the assessment of unemployment compensation tax must satisfy the two-prong exception to employment set forth in Section 4(*l*)(2)(B) of the Law. *Cameron v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 699 A.2d

---

[6] In its adjudication, the Department stated that in *Minelli*, "Commonwealth Court has added to the *Danielle Viktor* test by requiring proof that the individual or claimant be 'customarily engaged in such trade or business in order to be self-employed,' as opposed to being engaged in isolated or sporadic jobs." Department Adjudication at 17; R.R. 20a. The case referred to is *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations,* 892 A.2d 781 (Pa. 2006).

[7] This Court's scope of review determines "whether the necessary findings of fact are supported by substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights were violated." *Victor v. Department of Labor and Industry*, 647 A.2d 289, 291 n.1 (Pa. Cmwlth. 1994).

843, 845 (Pa. Cmwlth. 1997). Section 4(*l*)(2)(B) provides, in relevant part, as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, *unless and until it is shown* to the satisfaction of the department that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §753(*l*)(2)(B) (emphasis added).

Our Supreme Court has established a three-part test for determining whether the putative employee is engaged in "an independently established trade, occupation or business," *i.e.*, the second prong. *Danielle Viktor, Ltd. v. Department of Labor and Industry*, *Bureau of Employer Tax Operations*, 892 A.2d 781, 792 (Pa. 2006). In determining the independent trade, it must be determined (1) whether the individuals are able to work for more than one entity; (2) whether the individuals depend on the existence of the presumed employer for ongoing work; and (3) whether the individuals were hired on a job-to-job basis and could refuse any assignment.

Here, the Department conceded the first prong, so it need not be further addressed. On the second prong, the Department found that all five workers were allowed to provide services to anyone and that their work for Salon did not impede their ability to do so. However, because none of the five actually worked for others

8

at other locations, the Department concluded that they were not "customarily" engaged in an independently established trade or business.[8]

In so holding, the Department relied principally on *Minelli*, 39 A.3d 593, which considered whether a claimant receiving unemployment benefits became ineligible under Section 402(h) of the Law,[9] 43 P.S. §802(h), because she accepted a brief independent consulting position, which lasted about 22 hours over a three-day period. The Unemployment Compensation Board of Review (Board) held that this work rendered her ineligible by reason of self-employment. We reversed. We explained that a claimant's occasional work was "not enough to demonstrate that [said individual] is customarily engaged in an independently established trade, occupation, profession or business." *Minelli*, 39 A.3d at 598 (quoting *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893, 898 (Pa. Cmwlth. 2011)). This Court further explained that the *Minelli* decision "in no way depart[ed] from the three part test described by our Supreme Court in *Viktor* … to determine whether one is engaged in an 'independently established trade, occupation, profession or business.'" *Minelli*, 39 A.3d at 598.

Here, the Department reasoned that *Minelli* "added to the *Danielle Viktor* test[.]" Department Adjudication at 17; R.R. 20a. This is an incorrect understanding of *Minelli*, which did not revise the *Viktor* test; indeed, we specifically so stated. *Minelli*, 39 A.3d at 598. Further, *Minelli* did not hold that an individual

---

[8] The concept of "work for others" differs for the two types of workers. The nail technicians provided professional services to clients, not to Salon, a sole proprietorship without a need for these services. The nail technicians performed their services only at Salon. The cleaning personnel all had other occupations or jobs, but they only did cleaning services for Salon. Stated otherwise, Salon was their sole customer.

[9] Section 402(h) provides in pertinent part: "[a]n employe shall be ineligible for compensation for any week … [i]n which he is engaged in self-employment…." 43 P.S. §802(h).

must actually work for multiple clients in order to be self-employed. Nor did it hold that one who works only on occasion is necessarily an employee. That an individual may be unsuccessful in obtaining other clients or is simply satisfied working for a single client or at a single location does not transform an independent contractor relationship into that of employer/employee. *See C E Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162 (Pa. Cmwlth. 2008).

*Minelli* arose under Section 402(h) of the Law, which renders a claimant receiving benefits ineligible if she sets up a business. It has nothing to do with the nature of the claimant's employment relationship with her separating employer. By contrast, Section 4(*l*)(2)(B) of the Law considers the nature of the employment relationship between claimant and his separating employer. Ironically, the Law does not define "self-employment." It is by the two-part exception to the definition of "employment" in Section 4(*l*)(2)(B) that the meaning of "self-employment" has been explicated. Here, none of the workers at Salon is receiving unemployment benefits as a result of a separation from prior employment. This is not a *Minelli* case. The question is whether they are employees of Salon and subject to the unemployment compensation tax.

*Pasour v. Unemployment Compensation Board of Review*, 54 A.3d 134 (Pa. Cmwlth. 2012), is instructive. In *Pasour*, the claimant provided legal services to clients through an attorney referral company, known as Abelson. When his legal services were completed for a client to whom he had been referred, the claimant sought unemployment compensation, asserting that Abelson was his employer. The Board held that because he could do legal services for anyone and was free to refuse referrals from Abelson, he was customarily engaged in an independently established

10

trade or business. On appeal, the claimant asserted that the holding in *Minelli* required a different result. We rejected that argument, explaining:

> *Minelli* is distinguishable. In *Minelli*, we held, based on *Silver*, that a claimant, who is already receiving [unemployment compensation] benefits, is not disqualified as an independent contractor because the claimant subsequently accepts an occasional work offer on an as-needed basis. We stated, in *Silver*, "the fact that an unemployed person agrees to accept, and thereafter does accept, an occasional offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business." *Silver*, 34 A.3d at 898…. Claimant, unlike the claimants in *Minelli* and *Silver*, was not already receiving [unemployment compensation] benefits as a result of his separation from his prior employment. Thus, the question is not, as it was in *Minelli* and *Silver*, whether the position with Abelson disqualified Claimant from receiving benefits for which he was already qualified and receiving, but *whether the work Claimant performed for Client, via Abelson, is sufficient to grant [unemployment compensation] benefits in the first instance.*

*Pasour*, 54 A.3d at 139 (emphasis added).[10]

More recently, in *Lowman v. Unemployment Compensation Board of Review*, 178 A.3d 896 (Pa. Cmwlth. 2018), the Court considered whether a claimant, who was otherwise eligible for unemployment benefits, became ineligible by reason of his becoming an Uber driver. Consistent with *Minelli*, we held that the central question in a Section 402(h) case is whether an otherwise eligible claimant has taken "a positive step to embark on an independent trade or business, thereby disqualifying himself for benefits." *Lowman*, 178 A.3d at 902.

---

[10] *Pasour* supports the conclusion, here, that the licensed service providers, including the cosmetologist, the nail technicians and massage therapists, "work" for their clients, as opposed to working for Salon. As did Abelson, Salon provides space and makes referrals. It is not, however, a client of those services.

11

In sum, the *Minelli* analysis is used where the Department disqualifies a claimant receiving benefits from further compensation under Section 402(h) of the Law. *Minelli* is not instructive where, as here, the issue is an audit by the Tax Services Office of a putative employer's business operations.

The Department's reliance on *Peidong Jia v. Unemployment Compensation Board of Review*, 55 A.3d 545 (Pa. Cmwlth. 2012), is likewise misplaced. In that case, the claimant, a software programmer, worked under a consultant agreement. When his services were no longer needed, he applied for unemployment benefits and argued that he was eligible because he had no other business. This Court agreed that the claimant was eligible because he did not do programming services for any other customer and could not do so because his time was fully consumed by a single employer.

This distinction was clarified one year later in *Stauffer v. Unemployment Compensation Board of Review*, 74 A.3d 398 (Pa. Cmwlth. 2013). There, a mother of three children petitioned for review of an adjudication of the Board, which held that she was an employer of an unemployment compensation claimant who babysat for her children. The claimant did not provide child care for others, although she was not restricted from doing so. This Court reversed the Board, stating:

> In *Jia*, this Court reversed a Board decision that the claimant was an independent contractor because the record showed that the claimant was required to report to the employer's office, had an eight-hour work day schedule prescribed by the employer and needed to obtain the employer's permission for any deviation from the time or place of work set by the employer, and *this fixed schedule effectively precluded freedom to work for others*…. Here, in contrast, the record showed that Petitioner did not control the time, place or manner of Claimant's work and that Claimant was free to provide child care for others.

12

*Id.* at 408 (emphasis added). We explained that the pertinent inquiry is whether the putative employer directly, or by the hours of work assigned, prohibits the putative employee from performing services for others. Neither applied in *Stauffer*. Accordingly, the "fact that Claimant did not happen to do any babysitting for others during the period in question is immaterial." *Id.* at 407.

Here, as in *Stauffer*, the five workers did their work for Salon at the times of their choosing. They were free to work for others and at different locations. Their hours were not such that they were precluded from doing nail and cleaning services for others. The Department specifically found as follows:

> There appears to be little dispute that the individuals in question would have been able to perform services for more than one entity. Significantly, [Salon] did not use written contracts with these individuals [ ], and therefore, *there was no evidence of any type of restrictive covenants limiting their ability in this regard. There was also nothing to suggest that the hours worked at [Salon] effectively precluded them from offering their services to others.* [Salon] did not set their hours of work…. The nail technicians have their own stations at [Salon], and set their own appointments and schedule[.] Many of them, including the cleaning personnel, had other employment.

Department Adjudication at 27; R.R. 30a (internal citations omitted) (emphasis added). Accordingly, the Department's findings support the legal conclusion that the five individuals were independent contractors under *Stauffer*.

In sum, the totality of the circumstances weigh in favor of finding that from 2010 to 2014 the five workers at issue in this appeal were customarily engaged in an independently established trade or business under the second prong of Section 4(*l*)(2)(B) of the Law. They were able to work for more than one entity; were not limited by the nature of their work for Salon, or hours, to a single employer; and

13

were not dependent upon Salon's existence for ongoing work.[11] *Viktor*, 892 A.2d 781. The Department found that the "licensed providers were not hired by the job." Department Adjudication at 30; R.R. 33a.[12] However, all five individuals were able to refuse an assignment, which suggests an independent contractor relationship. *Viktor*, 892 A.2d at 797 ("It is difficult to fathom a situation where someone other than an individual engaged in his or her own business would possess the unmitigated prerogative to accept or reject assignments at will, to work only when he or she chose to, to substitute other workers of his or her choice when he or she chose not to complete an assignment, and to perform the services however he or she saw fit to do so.").

## Conclusion

For the foregoing reasons, we conclude that Salon has satisfied each of the factors identified in *Viktor* and the two prongs of Section 4(*l*)(2)(B) of the Law. Accordingly, we hold that the Department erred in denying Salon's petition for reassessment. The order of the Department is reversed insofar as it denied Salon's reassessment petition with respect to the nail technicians (S.M. and V.D.) and cleaning personnel (G.S., C.S., and B.G.). The order of the Department is otherwise affirmed insofar as it granted Salon's reassessment petition with respect to the massage therapists (L.M. and C.B.), as well as the three workers whom the Tax Services Office conceded are independent contractors.

_____
MARY HANNAH LEAVITT, President Judge

---

[11] To the extent the cleaning personnel were limited in their ability to accept more cleaning jobs, this was because of their hours of employment with other entities, not their hours with Salon.

[12] This finding is confusing because the licensed providers were hired by their clients "by the job."

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A Special Touch, : 
                    Petitioner : 
                               : 
        v.                     : No. 1181 C.D. 2016
                               : 
Department of Labor and Industry, : 
Office of Unemployment           : 
Compensation Tax Services,        : 
                    Respondent   : 

**O R D E R**

AND NOW, this 23rd day of August, 2018, the Final Decision and Order of the Department of Labor and Industry, dated June 16, 2016, in the above-captioned matter, is hereby AFFIRMED in part and REVERSED in part consistent with the attached opinion.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A Special Touch, : 
               Petitioner : 
  : No. 1181 C.D. 2016
      v. : 
  : Submitted: February 17, 2017
Department of Labor and Industry, : 
Office of Unemployment : 
Compensation Tax Services, : 
               Respondent : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

DISSENTING OPINION
BY JUDGE McCULLOUGH                  FILED: August 23, 2018

Because the three individuals (G.S., C.S. and B.G.) who performed occasional babysitting, cleaning/janitorial and laundry work for A Special Touch (Petitioner) and/or its owner were not "**customarily**" engaged in an independently established trade, occupation, business or profession, I respectfully dissent from the Majority's determination that they are independent contractors. To so hold disregards the statutory requirement and runs afoul of the Supreme Court's directive that the Unemployment Compensation Law (Law)[1] "requires the term 'employment' to be broadly construed to provide for the largest possible coverage of employees."

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*.

*Danielle Viktor, Ltd., v. Department of Labor and Industry*, 892 A.2d 781, 795 (Pa. 2006).

"An individual receiving wages for his services is presumed to be an employee, and the employer bears a heavy burden to overcome that presumption." *Jia v. Unemployment Compensation Board of Review*, 55 A.3d 545, 548 (Pa. Cmwlth. 2012). Petitioner failed to overcome this presumption or to establish that G.S., C.S., and B.G. were independent contractors. Our Supreme Court recognized that "a worker can be considered an independent contractor **only if he or she is in business for himself or herself**." *Danielle Viktor, Ltd.,* 892 A.2d at 798 (emphasis added). Section 4(l)(2)(B) of the Unemployment Compensation Law (Law)[2] provides the following two-prong test to determine if an individual is an employee or independent contractor,

> (B) Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; **and** (b) as to such services such individual is **customarily engaged** in an independently established trade, occupation, profession or business.[3]

43 P.S. §753(l)(2)(B) (emphasis added). Section 4(l)(2)(B) of the Law creates a presumption that an individual working for wages is an employee (*Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 995 A.2d 887, 890 (Pa. Cmwlth. 2010) and clearly requires that the individual must be "customarily

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*.

[3] As the Majority notes, the term "self-employment" is not defined in the Law. Hence, we look to the two-part exception to employment set forth in section 4(l)(2)(B) for guidance.

engaged" in an independently established trade, occupation, profession or business to be an independent contractor.

In *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593 (Pa. Cmwlth. 2012), we underscored the necessity of meeting this requirement while also recognizing the Supreme Court's three-part test developed in *Danielle Viktor, Ltd.*[4]  As we held in *Minelli*, the Law requires that to be an independent contractor, the individual must be "**customarily**" engaged in a trade or business. The fact that an unemployed person agrees to accept, and thereafter does accept, an occasional offer of work is simply not enough to demonstrate that the individual is engaged in an independently established trade, occupation, profession or business. As such, an individual who performed a consulting job for approximately 22 hours over a period of 3 days was not self-employed, and therefore not eligible to receive unemployment compensation benefits, because she was not customarily engaged in an independently established trade, occupation, profession or business.  *Minelli*.

In concluding that *Minelli* has no application in this case, the Majority overlooks the Law's clear requirement that the individual must be **customarily** engaged in an independently established trade or business.  *Minelli* relied on our earlier decision in *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893 (Pa. Cmwlth. 2011), which also addressed section 4(l)(2)(B) of the Law, albeit another case involving a disqualification under section 402(h) of the Law.  In *Silver*,

---

[4] Our Supreme Court in *Danielle Viktor, Ltd.*, established a three-part test for determining whether a putative employee is engaged in "an independently established trade, occupation, profession or business" under this second prong.  Specifically, under *Danielle Viktor, Ltd.*, we look at the following factors:  (1) whether the individuals are able to work for more than one entity; (2) whether the individuals depended on the existence of the presumed employer for ongoing work; and (3) whether the individuals were hired on a job-to-job basis and could refuse any assignment. *Id.*, 892 A.2d at 801-02.

we stated, "This Court has consistently held that, before a claimant will be declared to be self-employed, both elements of section 4(l)(2)(B) must be satisfied." *Id.* at 896. We noted that in *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005 (Pa. Cmwlth. 1990), this Court held that "the claimant's conduct [selling jewelry at a flea market] did not reflect positive steps in embarking on an independent trade or business venture," that such conduct was never intended to be on a permanent basis, and that it was merely an activity on the side to make extra money. *Silver*, 34 A.3d at 898.

Ultimately, in *Silver*, we held that an individual who was receiving unemployment compensation benefits and providing telephone consultations on an intermittent, as-needed basis for a third party was eligible for benefits as she was not self-employed, *i.e.*, she was not "customarily engaged in an independently established trade, occupation, profession or business." Acceptance of "an occasional offer of work is simply not enough" to satisfy the second prong of section 4(l)(2)(B) of the Law. *Silver*, 34 A.3d at 898. The Majority holds that these cases are limited to disqualifying determinations under section 402(h) of the Law and do not apply in the analysis of whether an individual is engaged in an independently established trade, occupation, profession, or business. However, because both *Minelli* and *Silver* form the basis of our precedent regarding application of the "customarily" engaged standard, I must strongly disagree. To hold otherwise is to ignore the statutory language and, furthermore, creates two different tests to determine whether an individual is an independent contractor.

Further, *Minelli* recognized that the three-part test developed by our Supreme Court in *Danielle Viktor, Ltd.*, did not address the customarily engaged element of the second prong.[5] In fact, we expressly pointed out in *Minelli* that,

> this Court, in holding that the second element of Section 4(*l*)(2)(B) has not been met under the facts of this case, is in no way departing from the three part test described by our Supreme Court in [*Danielle Viktor, Ltd.*] to determine whether one is engaged in an 'independently established trade, occupation, profession or business.' Rather, **we are simply recognizing that the Law requires an additional element, that the claimant be *customarily* engaged in such trade or business in order to be considered self-employed. This element was not discussed in [*Danielle Viktor, Ltd.*]**, or other cases which followed, because the persons found to be independent contractors in those cases were clearly engaged in ongoing business activities rather than an isolated or sporadic job(s).

*Id.*, 39 A.3d at 598 (emphasis added). Indeed, the persons found to be independent contractors in *Danielle Viktor, Ltd.*, were already recognized as being established limousine drivers who were engaged in ongoing business activities rather than isolated or sporadic jobs and there was no question as to whether they were customarily engaged in the same. Although *Minelli* involved a different procedural posture,[6] the facts therein clearly necessitated a review of section 4(l)(2)(B) of the Law and the three-part independent contractor test approved by our Supreme Court in *Danielle Viktor, Ltd.*

---

[5] I agree with the Majority to the extent it stated that the Department's decision incorrectly characterized *Minelli* as adding to the test in *Danielle Viktor, Ltd. Minelli* did not add to this test. It merely clarified the same.

[6] Namely, a question of whether an individual was disqualified from receiving unemployment compensation benefits under section 402(h) of the Law, 43 P.S. §802(h), as a result of that individual performing occasional work for a third party. Section 402(h) of the Law states that an employee shall be ineligible for compensation for any week "[i]n which he is engaged in self-employment." 43 P.S. §802(h).

Here, the Department found that G.S. performed **part-time** cleaning/janitorial and maintenance work for Petitioner, **did not have his own business**, **worked a regular job** at the M&M factory, and **picked up odds and ends jobs** when he could. (Department's Final Decision and Order at 8.) Clearly, the fact that G.S. does not have his own business and the work in question was classified as "odds and ends" precludes a finding that he is an independent contractor. Regarding C.S., the Department found that he was a **college student** who **helped** Petitioner/Petitioner's owner **with her children** and with **cleaning duties**, and also **worked** at the local Red Robin **restaurant**. *Id.* Regarding B.G., the Department found that she assisted Petitioner/Petitioner's owner with **babysitting** and **janitorial duties** approximately **one or two days** a week and also **worked for a temp agency**. *Id.* at 9-10.

There were no findings by the Department as to whether these individuals were customarily engaged in any of these services or whether G.S., C.S., or B.G. depended on the existence of Petitioner for ongoing work. However, the Majority makes its own finding as to whether they depended on Petitioner for ongoing work in the negative. Nonetheless, this finding alone would not qualify G.S., C.S., or B.G. as independent contractors because there was no evidence they were customarily engaged in offering such services as part of an independently established trade, occupation, profession, or business.

As noted above, with regard to the second prong of the *Danielle Viktor, Ltd.* test, our Supreme Court has explained that "a worker can be considered an independent contractor only if he or she is in business for himself or herself." 892 A.2d at 798. Here, the Department recognized as much, stating that "**the relevant inquiry seems to be whether [G.S., C.S., and B.G.] performed the same services as part of an independent business or for other businesses**." (Department's Final

Decision and Order at 27-28.) **The Department went on to conclude that such a "showing clearly was not made with respect to the three cleaning personnel in dispute: GS, CS, and BG**." (*Id.* at 28.) Moreover, the record indicates that these individuals occasionally worked for Petitioner as needed under a non-fixed schedule, and while each of these individuals worked other jobs, the other jobs were unrelated to the services they performed for Petitioner and, hence, do not show that they had independent businesses providing such services.

With respect to the final prong of this test, the record establishes that G.S., C.S., and B.G. could refuse any assignment, but only C.S. and B.G. were hired on a job-to-job basis. The nature of G.S.'s hiring was, at best, ambiguous in the record, which merely indicated that he performed janitorial work a couple of hours per week for Petitioner since 2013. The record is not clear if this work was steady each week or merely on an as-needed basis.

Based on this record, the Department correctly found there was insufficient evidence to conclude that G.S., C.S., or B.G. were in business for themselves offering babysitting, cleaning/janitorial, and/or laundry services to demonstrate that they were customarily engaged in an independently established trade, occupation, profession or business. Section 4(l)(2)(B) of the Law; *Minelli*. In reversing the Department's order concluding that they were employees, the Majority focuses only on the three-part test in *Danielle Viktor, Ltd.*, to the exclusion of the "customarily" engaged statutory requirement and this Court's precedent, and as such I must respectfully dissent

_____
PATRICIA A. McCULLOUGH, Judge

PAM - 7