IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pathways Counseling Services, LLC, :
                Petitioner :
                 :
          v.                : No. 1332 C.D. 2018
                 : ARGUED: April 10, 2019
Commonwealth of Pennsylvania, :
Department of Labor and Industry, :
              Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE CEISLER               FILED: July 12, 2019

Pathways Counseling Services, LLC (Pathways) petitions for review from a decision and order of the Department of Labor and Industry, Office of Unemployment Compensation Tax Services (Department) denying Pathways' petition for reassessment. Pathways argues it is not the employer of the professional counselors who provide services in its building and to whom it provides client referrals. Accordingly, Pathways contends the Department erred in assessing unemployment compensation (UC) taxes related to those counselors. After thorough review, we reverse.

## I. Background

### A. Counselors' Contracts with Pathways

Pathways has contracts with a number of insurance companies to provide referrals for counseling, the costs of which are covered by insurance. Insurers do

not contract directly with individual psychologists or counseling practices. Instead, Pathways contracts with the counselors and provides them with referrals from the insurers. The counselors are then compensated through Pathways with funds paid by the insurers for the counseling services provided to their insureds.

Pathways also has clients who are referred for counseling by other agencies or providers. Pathways in turn refers those clients to the counselors. Payment is made through Pathways by the clients for those services as well.

Pathways provides office space to each counselor with whom it contracts. Pathways provides each office with telephone and fax service, as well as limited furniture. However, counselors supply most of their own office furnishings. Pathways also provides billing service. Although counselors are not required to use that service, they generally do take advantage of it. Counselors are responsible for their own professional licensing and fees, as well as professional liability insurance. Pathways does not provide any employment benefits.

In return for its referrals, office space, and other services, Pathways retains a percentage of the fees it receives on behalf of each contracting counselor. The percentage retained varies individually between 30% and 40%. If for any reason an insurer or client does not pay for service, the counselor who provided that service is not paid by Pathways. Thus, each counselor bears the primary risk of any nonpayment for services by or on behalf of a client, although Pathways also risks losing its 30-40% fee for unpaid services.

Counselors are free to, and do, accept counseling clients from sources other than Pathways. Counselors are likewise free to, and do, enter into services contracts with entities other than Pathways, providing services at various institutions.[1]

_____

[1] For example, one counselor sees clients two days each week at his office in Pathways' building but also provides in-house counseling at a private residential facility.

Counselors choose their own business card designs, as well as the information to be included on the business cards. They are not required to identify any affiliation with Pathways on their business cards. Pathways features its counselors on its website, but individual counselors may market their practices separately as well.

Counselors decide which referrals to accept from Pathways, as well as what other clients and contracts to accept. Counselors may decline referrals from Pathways at their discretion without adverse consequences, although Pathways acknowledged its business model would not work if the counselors did not accept any of its referrals.

Counselors set their own hours and control their own schedules. They have their own keys to the building and are free to schedule appointments outside normal business hours if they wish.

Further, Pathways does not set the amounts of clients' fees; counselors and clients determine the fee amounts, presumably subject to limits on insurance coverage amounts if applicable. A counselor may also freely choose to provide service to a client at a reduced fee, or no fee.

Pathways requires counselors to be professionally licensed, but does not provide any training or hold any meetings. Pathways does not evaluate or otherwise monitor counselors' performance. Other than a general contractual agreement to use their best efforts, counselors are not subject to any control or direction from Pathways regarding the performance of their professional services.

Counselors are free to compete directly with Pathways for clients. However, if they leave Pathways, a non-solicitation provision in their contracts with Pathways

prohibits them for a period of six months[2] from recruiting other counselors to leave Pathways and join a competing practice.

## B. Department Assessment

In November 2016, the Department issued a notice against Pathways, assessing UC contributions and interest against Pathways for calendar years 2012 through 2015 and the first quarter of 2016. Pathways filed a reassessment petition with the Department challenging the assessment. Following a fact-finding conference and briefing by the parties, the Department rejected Pathways' reassessment petition. Pathways then filed a timely petition for review in this Court.

## II. Issues

On appeal,[3] Pathways lists seven issues, but actually they are all sub-parts of a single overarching legal issue. Pathways argues the counselors are independent contractors, not employees, for purposes of determining Pathways' obligations to pay UC tax on the compensation paid to the counselors. Pathways contends the Department committed legal error and the record lacked substantial evidence to support the Department's factual findings.

## III. Discussion

The existence of an employer-employee relationship is a question of law, based on the specific facts of each case. *Danielle Viktor, Ltd. v. Dep't of Labor & Indus.*, 892 A.2d 781 (Pa. 2006); *Clark v. Unemployment Comp. Bd. of Review*, 129

---

[2] Prior to 2013, the non-solicitation agreement was for three years rather than six months.

[3] Our review is limited to determining whether the Department committed an error of law, whether necessary findings of fact are supported by substantial evidence, or whether the petitioner's constitutional rights were violated. *A Special Touch v. Dep't of Labor & Indus.*, 192 A.3d 1238 (Pa. Cmwlth. 2018), *appeal granted on other grounds*, (Pa., No. 615 MAL 2018, filed Mar. 13, 2019), 2019 Pa. LEXIS 1525 (unreported).

A.3d 1272 (Pa. Cmwlth. 2015). Whether an individual is an employee or an independent contractor is governed by the two-part test set forth in Section 4(*l*)(2)(B) of the Unemployment Compensation Law (UC Law)[4]:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the [D]epartment that - - (a) such individual has been and will continue to be free from control or direction over the performance of such services both under this contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 752(*l*)(2)(B).

## A. Freedom from Control or Direction

In its written decision, the Department acknowledged that analyzing the issue of control includes factors such as:

> whether there was a fixed rate of remuneration; whether taxes were withheld from the [counselor's] pay; whether [Pathways] supplied the tools necessary to carry out the services; whether [Pathways] provided on-the-job training; whether [Pathways] set the time and location for work; whether [Pathways] had the right to monitor the [counselor's] work and review performance; and whether [Pathways] held regular meetings that [the counselor] was expected to attend.

Reproduced Record at a694[5] (citations omitted). *See, e.g.*, *Pasour v. Unemployment Comp. Bd. of Review*, 54 A.3d 134 (Pa. Cmwlth. 2012).

The Department correctly observes that no single factor is controlling. *See Pasour*. Here, however, *not one* of the listed factors is present. Counselors set their own rates of compensation. Pathways withholds no taxes from its payments to counselors. The record does not indicate that "tools" are needed by counselors, but

---

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751 – 919.10.

[5] For clarity, we follow the numbering format used by Pathways in the reproduced record.

5

in any event, Pathways provides none. Pathways provides no training. Counselors, not Pathways, set work schedules. To the extent counselors are required to provide services at Pathways' offices, that requirement is imposed by the insurers, not by Pathways. Pathways does not monitor counseling sessions or review counselors' performance. Pathways holds no meetings with counselors.

The Department, while purporting to consider the totality of the circumstances, *see Pasour*, actually relies on a few facts of limited relevance to justify its determination that the counselors are Pathways' employees. For example, the Department points to testimony by one counselor that he assumed, without asking, that he was permitted to receive outside mail at his Pathways address. The Department infers from that statement that Pathways had the ability to control whether counselors received mail at its offices. That inference is unfounded. To the contrary, the fair inference of the testimony is that Pathways did *not* control what mail the counselors received there.

Similarly, although the unrefuted testimony of the counselors and Pathways' principal was that counselors are free to accept or reject any referral, the Department focuses instead on an acknowledgment by Pathways' principal that the business probably could not continue if none of the counselors accepted any referrals. The Department springs from that statement to a conclusion that the counselors were not free to reject any assignment. Such a conclusion is equally unfounded as the inference concerning mail delivery. Obviously a referral business cannot stay in business if no one accepts any of its referrals. However, that fact bears no logical relation to the question of whether the referring company controls the performance of those who accept its referrals.

This Court has held referral services are not employers under facts similar to those here. For example, in *Pasour*,[6] a licensed attorney signed an independent contractor agreement with Abelson, a referral service that matched attorneys with clients seeking legal help on specific assignments. Payment was made through Abelson. However, Abelson did not supervise the contracting attorney or require status reports. Abelson provided no training. The contracting attorney was free to accept or reject assignments, as well as to accept work from clients not referred by Abelson. Clients, not Abelson, set the attorney's hours and compensation rates. Abelson withheld no taxes, instead issuing an IRS Form 1099 regarding compensation paid to the contracting attorney. This Court concluded the contracting attorney was not subject to Abelson's direction or control. *Id.*; *see also Krum v. Unemployment Comp. Bd. of Review*, 689 A.2d 330 (Pa. Cmwlth. 1997) (attorney not subject to direction or control by referral service), *cited with approval in Danielle Viktor*.

*White-Butler v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 622 C.D. 2010, filed September 29, 2010), 2010 Pa. Commw. Unpub. LEXIS 657 (unreported) is also analogous.[7] *White-Butler* involved a referral service for various social services, including counseling services. The petitioner was a mental health service provider. The referral service entered into independent contractor agreements with service providers to whom it referred clients. Service providers could accept or reject referrals and were free to have other employment, even with

---

[6] *Pasour* involved a claim by a putative employee for UC benefits, rather than a reassessment petition by a putative employer. However, as this Court observed in *Pasour*, the analysis of whether an individual is an employee or an independent contractor applies the same analytical framework of Section 4(*l*)(2)(B) of the UC Law, regardless of whether a UC claim or a reassessment petition is involved.

[7] We cite this unpublished opinion as persuasive pursuant to 210 Pa. Code § 69.414.

7

competing referral services, although the petitioner did not do so. They were free to market their services by other means as well. Clients determined the hours needed and rates they were willing to pay. The referral service provided no training; service providers determined the means, manner, and method by which to perform services for clients. This Court found the service providers were not subject to the direction or control of the referral service. *Id.*

We find *Pasour*, *Krum*, and *White-Butler* persuasive here. We conclude that the counselors with whom Pathways contracts are free from its direction or control, as provided in Section 4(*l*)(2)(B) of the UC Law. Therefore, Pathways has satisfied the first prong of the independent contractor analysis.

### B. Independently Established Profession

In analyzing the second prong of Section 4(*l*)(2)(B) of the UC Law, this Court primarily considers whether the putative employee "was able to perform 'the activities in question to anyone that wished to avail themselves of the services' and 'whether the nature of the business compelled the [putative employee] to look to only a single employer for the continuation of such services.'" *Pasour*, 54 A.3d at 138 (quoting *Resource Staffing, Inc. v. Unemployment Comp. Bd. of Review*, 995 A.2d 887, 890 n.6 (Pa. Cmwlth. 2010)); *see also Krum*. Although no single factor is controlling, professionals contracting with referral services to obtain clients, and who hold themselves out as providing their professional services to those who want them, are generally viewed as customarily engaged in an independent trade or profession, within the meaning of Section 4(*l*)(2)(B). *See, e.g.*, *Pasour* (citing *Krum*). Further, one who practices in a "free[-]standing" profession and whose arrangement with a referral service is "non-exclusive" is "not compelled to look to

8

only a single employer," and thus satisfies the second prong of Section 4(*l*)(2)(B). *Pasour*, 54 A.3d at 139.

In addition to the two primary considerations discussed above, other relevant factors, even though not required under the UC Law, may also inform the analysis of the second prong of Section 4(*l*)(2)(B). For example, the ability to accept or reject assignments is relevant to both prongs of the analysis. *See Danielle Viktor*. Further, a professional who brings with him the "necessary perquisites" of providing his services (such as a professional license), and who bears some risk of financial loss in connection with providing his services, has indicia of independent contractor status for purposes of the second prong of Section 4(*l*)(2)(B). *Danielle Viktor*, 892 A.2d at 798, 802. Notably, the contracting professional need not be in business for himself and need not own the assets of the business. *Id.* at 798, 800. Moreover, even where the professional performs most or all of his services for the contracting referral service, that does not preclude a finding that he is customarily engaged in an independently established profession for purposes of Section 4(*l*)(2)(B). *Danielle Viktor* (citing *Dep't of Labor & Indus. v. Aluminum Cooking Utensil Co.*, 82 A.2d 897 (Pa. 1951)).

Here, the evidence showed counselors contracting with Pathways hold themselves out as providing their professional services to those who want them. As professionally licensed counselors, they practice in a free-standing profession. Their arrangement with Pathways is non-exclusive. They have the ability to accept or reject assignments. They bring with them the necessary prerequisites of their practices, in that they obtain their own professional licenses and liability insurance coverage. Because they do not receive payment through Pathways for any counseling services for which clients or insurers fail to pay, the counselors bear some

9

risk of financial loss in connection with providing their services. We find these factors demonstrate that the counselors are customarily engaged in an independently established profession. Therefore, Pathways has satisfied its burden of meeting the second prong of the Section 4(*l*)(2)(B) analysis.

## IV. Conclusion

Based on the foregoing discussion, we conclude Pathways has satisfied both prongs required to demonstrate independent contractor status of the counselors under Section 4(*l*)(2)(B) of the UC Law. We find the Department committed legal error in determining otherwise. Accordingly, we reverse the Department's assessment of UC taxes and related interest against Pathways in relation to the counselors.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pathways Counseling Services, LLC, :
                Petitioner :
                       :
      v. : No. 1332 C.D. 2018
                       :
Commonwealth of Pennsylvania, :
Department of Labor and Industry, :
                Respondent :

# **O R D E R**


AND NOW, this 12th day of July, 2019, the order of the Department of Labor and Industry, Office of Unemployment Compensation Tax Services, is REVERSED.


_____
ELLEN CEISLER, Judge